THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MELVIN WHITEHEAD, Defendant-Appellant.

First District (2nd Division)   No. 86—3595

Opinion filed June 14, 1988.

902

Paul P. Biebel, Jr., Public Defender, of Chicago (Ruth A. McBeth and Alison Edwards, Assistant Public Defenders, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Kenneth T. McCurry, Patricia Y. Brown, and James M. Sullivan, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

On appeal from his conviction for murder and sentence of 35 years' imprisonment following a bench trial, defendant presents for our review the questions whether: (1) evidence of his phencyclidine (PCP) intoxication improperly barred consideration of an insanity defense; (2) the circuit court erred in considering prejudicial testimony of his prior misconduct; and (3) his sentence is excessive.

Defendant first began dating Sheener Taylor, the murder victim, in approximately June 1984. They had at least one argument during which he physically threatened her. Sheener had an abortion in May 1985 and told her father that she had been carrying defendant's child. Defendant wanted her to have the child but her father opposed it. Sheener stopped dating defendant and began seeing someone else in May 1985.

According to defendant's signed confession, he went to Sheener's home around 8:15 a.m. on June 3, 1985, and they went to a fast-food restaurant. They returned to her home and, after the father left for work, defendant entered Sheener's home. They smoked five marijuana cigarettes together and had sexual intercourse in Sheener's bedroom. They went to the kitchen, where defendant sliced salami with a butcher knife. After he returned to the bedroom, Sheener entered

holding the knife under a bath towel. She asked him what he would do if she dropped the knife near his neck. He began laughing, they wrestled on the bed, she left the bed and waived the knife playfully at him; he put her in a headlock, took the knife and said he had control. After placing the knife on the bed, they began "to romance" again. An argument started when he noticed she had a "hickey" on her chest. Sheener informed him she had met someone else at church.

They talked and agreed to a suicide pact. They both got on their knees and said a prayer, she lay down on the bed and, holding the knife, he straddled her. She asked what he was doing and started saying "no." He put the knife against the center of her chest and began to apply pressure. When she mumbled "no," he put a pillow over her head, pushed the knife into her chest and, while blood spurted on him, he stabbed her at least four more times "and then he couldn't stop stabbing her." Afterwards he rinsed the knife off in the bathroom sink, cleaned himself off with a towel and let himself out, throwing his shirt and one sock into a garbage can outside before returning home.

Deborah Richardson saw defendant between 4:30 and 5 p.m. on June 3, 1985. He stated Sheener had telephoned him that morning to come over, but when he arrived he found the front door open and her dead under the kitchen table, with a knife stuck in her chest. Defendant claimed he had carried Sheener in his arms, telephoned the police and fire departments, notified her father and waited there after the police questioned him. Sheener's father had been upset and gone off. Paul Moore also saw defendant talking with Richardson and crying and remembered that defendant said he found his girlfriend dead, that someone had broken in and killed her and that he had telephoned the police. Defendant was very upset but did not appear intoxicated and understood Moore's questions. Richardson recalled defendant crying and being visibly upset, but he did not appear under the influence of drugs to her: she observed neither slurred speech nor rolling of eyes and he spoke clearly and understandably. Later that evening she saw him eat dinner with some ladies who lived in her building.

When Sheener's father returned home, at about 10:10 p.m., he found the front door to the apartment bolted on the inside, knocked without a response, entered through the unlocked back door and found his daughter lying face down in the puddle of blood, with stab wounds in her back, neck and thigh. The postmortem revealed 12 stab wounds to her body, six to the chest and abdomen and six to the back, as well as a stab wound to the right leg. A forensic pathologist in the Cook County medical examiner's office determined the cause of death

was multiple stab wounds.

The police detective who arrested defendant on June 4, 1985, searched his apartment with his consent and found clothes with red stains. A police serologist determined Sheener's blood type was type B, and the bloodstains from her home and from the pants and sock that were found in defendant's home also tested positive for type B. On June 4, 1985, after being given his *Miranda* rights, defendant gave a written statement to an assistant State's Attorney, which he signed. At that time, he appeared well dressed, lucid, spoke intelligently and did not slur his words. On June 14, 1985, a grand jury indicted defendant on two counts of murder and one count of armed violence. Ill. Rev. Stat. 1985, ch. 38, pars. 9—1(a)(1), (a)(2), 33A—2.

Dr. Henry G. Comroe, a psychiatrist who examined defendant on August 16, 1985, made a primary diagnosis that defendant suffered from a major depressive episode with suicidal ideations that began in May 1985. His secondary diagnosis was PCP intoxication. Dr. Comroe believed defendant's drug abuse began in May or June 1985 as a result of his depression. A psychologist had also diagnosed defendant as having major depression. Dr. Comroe believed that the marijuana cigarettes defendant and Sheener smoked had contained PCP, based on defendant's statement to him and his mother's comments about defendant's behavior afterwards. In Dr. Comroe's opinion, on June 3, 1985, defendant was unable to conform his behavior to the requirements of the law and was unable to appreciate the criminality of his behavior. Defendant was taking an antidepressant drug while in jail.

Another psychiatrist, Dr. Albert Stipes, examined defendant on November 6, 1985, and made a diagnosis of major depression without psychotic features, as well as a history of PCP intoxication. Dr. Stipes concluded that defendant did not suffer from a mental disease on June 3, 1985, that would have made him unable to appreciate the criminality of his action or conform his conduct to legal requirements. Dr. Stipes believed any psychotic behavior by defendant would have resulted from ingesting PCP.

The circuit court characterized defendant's action as "done by a person who was apparently acting in a frenzy," and concluded that the defense of insanity was unavailable when the evidence showed voluntary nonhabitual toxic intoxication, relying on *People v. Free* (1983), 94 Ill. 2d 378, 408, 447 N.E.2d 218, *cert. denied* (1983), 464 U.S. 865, 78 L. Ed. 2d 701, 104 S. Ct. 514. Basing its decision on all the evidence in the case, as well as on *People v. Free,* the circuit court found defendant guilty of murder and sentenced him as previously stated.

I

Defendant first asserts that the circuit court deprived him of his right to present a defense by holding that evidence of voluntary intoxication precluded a defense of insanity, misapplying *People v. Free*, 94 Ill. 2d 378, since, at bar, defendant suffered from a mental defect that predated his PCP ingestion.

■■ ■ Insanity is an affirmative defense which requires that, as a result of mental disease or defect, a person lacks substantial capacity to understand the criminality of his conduct or conform that conduct to legal requirements. (Ill. Rev. Stat. 1985, ch. 38, pars. 6—2(a), 6—4.) Drug intoxication is also an affirmative defense requiring a drugged condition which either negates the existence of a mental state, which is an element of the offense involved, or is involuntarily produced and deprives defendant of substantial capacity to comprehend his conduct's criminality or conform his conduct to the requirements of law. Ill. Rev. Stat. 1985, ch. 38, pars. 6—3, 6—4.

■ In *People v. Free*, (1983), 94 Ill. 2d 378, 403-08, 447 N.E.2d 218, Free argued that toxic psychosis should support an insanity defense because he had consumed beer, a marijuana cigarette and PCP and then had no recollection of his actions. Our supreme court held that toxic psychosis induced by voluntary intoxication, whether from drugs, alcohol or both, did not constitute a mental disease or defect that could qualify as legal insanity. It asserted that defendants who voluntarily ingested intoxicants should not be insulated from criminal responsibility for actions resulting from a voluntarily self-induced temporary mental state. The *Free* court concluded (*People v. Free*, 94 Ill. 2d at 407-08):

> "Simply stated, a voluntary intoxication or a voluntary drugged condition does not raise the defense of insanity, but is governed by section 6—3 and may be used to negate the existence of the mental state which is an element of the crime. (Ill. Rev. Stat. 1977, ch. 38, par. 6—3.) A voluntary intoxication or a voluntary drugged condition precludes the use of the insanity defense *unless* the mental disease or defect is traceable to the habitual or chronic use of drugs or alcohol [citation] and such use results in a 'settled' or 'fixed' permanent type of insanity." (Emphasis in original.)

■ ■ In the case *sub judice*, defendant claims that as a result of both PCP intoxication and a prior major depressive episode he lacked capacity to comprehend the criminality of his conduct or to conform to legal requirements. That precise contention was not addressed in *People v. Free*. The principles relied on by the supreme court, how-

ever, when applied to the present case, preclude implementation here of an insanity defense. More recently, it has been held that drug addiction alone cannot justify such a defense absent a mental defect or disease traceable to chronic or habitual drug use and resulting in a permanent kind of insanity. (*People v. Downey* (1987), 162 Ill. App. 3d 322, 334, 515 N.E.2d 362.) Defendant's voluntary intoxication here, without more, does not insulate him from criminal responsibility. No record evidence indicates that defendant is a chronic or habitual user of drugs. Nor did the psychiatric testimony establish that defendant suffers from a permanent type of insanity. Instead, ingestion of PCP apparently triggered the killing. As in *People v. Free*, defendant unsuccessfully blames his voluntary intoxication for his violent actions.

Witnesses who conversed with defendant close to the time of the murder observed no conduct indicating he was out of touch with reality. (*People v. Ford* (1968), 39 Ill. 2d 318, 322, 235 N.E.2d 576; see *People v. Clark* (1981), 102 Ill. App. 3d 414, 421, 429 N.E.2d 1255.) Moore recalled defendant had understood the questions he asked that afternoon. Richardson stated defendant spoke clearly and understandably and she saw him eat dinner that night with ladies from her building. After his arrest the next day, defendant spoke intelligently and appeared lucid to the assistant State's Attorney. Defendant's cleaning himself off with a towel and rinsing off the murder weapon prior to leaving Sheener's apartment were deliberate rational actions.

Criminal defendants have a right to present relevant evidence and witnesses in their own defense during trial. (*Taylor v. Illinois* (1988), 484 U.S. 400, ___, 98 L. Ed. 2d 798, 810, 108 S. Ct. 646, 652; see *United States ex rel. Enoch v. Hartigan* (7th Cir. 1985), 768 F.2d 161, 163, *cert. denied* (1986), 475 U.S. 1053, 89 L. Ed. 2d 588, 106 S. Ct. 1281.) The trier of fact has the duty to weigh the opinions of experts, considering the factual bases of such opinions. (*People v. Varnado* (1978), 66 Ill. App. 3d 413, 418, 384 N.E.2d 37.) Here, defendant presented an insanity defense; however, the circuit court correctly interpreted *Free*, in light of all the evidence, and properly held the insanity defense inapplicable in these circumstances.

## II

Defendant challenges certain testimony as highly prejudicial. Sheener's sister had testified that during an altercation, she saw defendant threatening Sheener with a vase. Defendant claims this raised the inference that he was a violent person. The State considers such testimony admissible to show defendant could form the requisite intent for murder. At trial, defendant failed to specify his grounds for

objecting to this testimony.

■■ Evidence of other crimes is admissible if relevant to establish intent, absence of mistake, design, plan, identity, motive or *modus operandi*. (*People v. Adams* (1985), 109 Ill. 2d 102, 121, 485 N.E.2d 339, *cert. denied* (1986), 475 U.S. 1088, 89 L. Ed. 2d 730, 106 S. Ct. 1476; *People v. Brozan* (1987), 163 Ill. App. 3d 73, 79, 517 N.E.2d 285, *appeal denied* (1987), 116 Ill. 2d 564.) Evidence of other crimes may also be admitted if relevant to prove any material issue other than defendant's propensity to commit a crime. (*People v. Stewart* (1984), 105 Ill. 2d 22, 62, 473 N.E.2d 840, *cert. denied* (1985), 471 U.S. 1131, 66 L. Ed. 2d 283, 105 S. Ct. 2666.) The probative value of such evidence is weighed against its prejudicial effect (*People v. Stewart*, 105 Ill. 2d at 62; *People v. Brozan*, 163 Ill. App. 3d at 79), and the decision to admit such evidence will not be overturned absent an abuse of discretion. *People v. Brozan*, 163 Ill. App. 3d at 80; *People v. Wright* (1986), 140 Ill. App. 3d 576, 579, 488 N.E.2d 1344.

■■ The State offered the vase testimony to combat insanity and intoxication defenses and establish defendant's intent. Defendant threatened Sheener with a vase in March 1985, well before his major depressive episode began in May 1985 and before his PCP intoxication as well. That testimony cast doubt on defendant's theory that his actions resulted from his depression and drug intoxication. Accordingly, such testimony was relevant to intent (see *People v. McKibbins* (1983), 96 Ill. 2d 176, 185-86, 449 N.E.2d 821, *cert. denied* (1983), 464 U.S. 844, 78 L. Ed. 2d 136, 104 S. Ct. 145; *People v. Green* (1973), 14 Ill. App. 3d 972, 988, 304 N.E.2d 32, *cert. denied* (1974), 417 U.S. 972, 41 L. Ed. 2d 1143, 94 S. Ct. 3179), and its probative value outweighs any prejudice to defendant. Defendant's reliance on *People v. Meares El* (1980), 83 Ill. App. 3d 31, 38, 403 N.E.2d 547, is unavailing. There, the evidence objected to concerned defendant's carrying a knife as proof of a violent character when evidence of his good character had not been introduced. At bar, the testimony focused on defendant's becoming physically threatening during a previous argument with the victim. There was no abuse of discretion in admitting this evidence.

### III

Defendant finally contends that his sentence is excessive because the circuit court failed to consider his rehabilitative potential, his age (21 years old at the time of the murder), his lack of criminal history, his apology at sentencing, his depression and PCP intoxication. He asserts that he is unlikely to commit another crime.

During sentencing, the State requested that an extended term be imposed, due to the exceptionally brutal and heinous behavior involved in the repeated stabbing of a 21-year-old victim, defendant's failure to tell the truth after the murder, and his apparent lack of remorse. Defendant's stepfather, aunt and mother testified to his good conduct prior to the killing and to his changed behavior. Defendant apologized for his action.

█ The judgment of the circuit court in evaluating the appropriateness of punishment must be given great weight. (*People v. Godinez* (1982), 91 Ill. 2d 47, 55, 434 N.E.2d 1121; *People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882.) A sentence may not be altered, absent an abuse of discretion. (*People v. Hicks* (1984), 101 Ill. 2d 366, 375, 462 N.E.2d 473.) The sentence given defendant fell within the statutory range of 20 to 40 years. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(a)(1)(a).) The nature of the crime, protection of the public, deterrence and punishment are relevant as well as defendant's rehabilitation prospects and youth. *People v. Santiago* (1987), 161 Ill. App. 3d 634, 643, 515 N.E.2d 228, *appeal denied* (1987), 117 Ill. 2d 551; *People v. West* (1977), 54 Ill. App. 3d 903, 909, 370 N.E.2d 265.

█ Error is identified in the circuit court's failure to state reasons for the sentence imposed, in reliance upon statute. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—4—1(c).) That provision has been construed to be directory, not mandatory. (*People v. Davis* (1982), 93 Ill. 2d 155, 162, 442 N.E.2d 855.) When the circuit court hears mitigation evidence, it is assumed it considered that evidence, absent some contrary indication other than the sentence imposed. (*People v. Foreman* (1987), 153 Ill. App. 3d 346, 358, 505 N.E.2d 731, *cert. denied* (1987), 484 U.S. 854, 98 L. Ed. 2d 115, 108 S. Ct. 160; *People v. Bergman* (1984), 121 Ill. App. 3d 100, 109, 458 N.E.2d 1370.) This is particularly true when the record demonstrates that defense counsel argued factors in mitigation. *People v. Foreman*, 153 Ill. App. 3d at 358.

Accordingly, no abuse of discretion in sentencing by the circuit court is found.

For the foregoing reasons, there are no bases upon which to interfere with the decision of the circuit court in this case, and we affirm.

Affirmed.

BILANDIC and SCARIANO, JJ., concur.