THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. AARON TRIMBLE, Defendant-Appellant.

First District (4th Division) No. 1—88—1271

Opinion filed August 8, 1991.—Rehearing denied October 25, 1991.

---

Randolph N. Stone, Public Defender, of Chicago (Shelton O'Neal Green, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Mary Brigid Kenney, and Kenneth T. McCurry, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:

After a bench trial, defendant, Aaron Trimble was found guilty of two counts of murder (Ill. Rev. Stat. 1987, ch. 38, pars. 9—1(a)(1), (a)(3)), home invasion (Ill. Rev. Stat. 1987, ch. 38, par. 12—11(a)(1)), attempted armed robbery (Ill. Rev. Stat. 1987, ch. 38, par. 8—4), and armed violence (Ill. Rev. Stat. 1987, ch. 38, par. 33A—2). He was sentenced to concurrent terms of 40 years for murder, 30 years for home invasion, 15 years for attempted armed robbery, and 30 years for armed violence.

The following issues are before this court for review: (1) whether the State knowingly used perjured testimony at trial; (2) whether the multiple convictions and sentences violated defendant's right to due process of law; (3) whether defendant received a fair trial in which

the trial court received and considered competent evidence; (4) whether the trial court properly found defendant guilty beyond a reasonable doubt; (5) whether defendant received a fair sentencing hearing; and (6) whether the trial court abused its discretion by imposing the maximum possible sentence for each offense.

We affirm in part and vacate in part.

BACKGROUND

On May 21, 1986, Hattie Bennett resided with her 10-year-old son, Willie Bennett, in a first-floor rear apartment located at 14905 Page in Harvey, Illinois. Around 2:30 a.m. on that date, Bennett was at home with her son, who was asleep in his bedroom. Bennett testified that at that time, she heard an automobile stop behind her apartment and saw the victim, Harold Sylvester, and his friend. She stated that Sylvester's friend, defendant, and several other people gathered in front of the apartment building, while Sylvester entered her apartment. Then, Bennett told the court, she locked her metal door which was just outside of the door to her apartment. She also stated that both the defendant, and James Amos, his codefendant, had keys to her metal door.

Bennett further testified that shortly thereafter, defendant and James Amos broke through her locked interior living room door. She stated that defendant had a shotgun in his hand when he entered the room. Detective Dennis Hinkle of the Harvey police department later testified that the door "could be opened with a small amount of pressure." Bennett's testimony revealed that defendant demanded $40 from Sylvester as payment for repairing his car. Sylvester responded by stating that he had a job and would pay defendant the money. When defendant continued to threaten him, Sylvester stated that he would ask his mother for the money. Defendant then told Amos to "up the missile" on Sylvester. Bennett later testified that the word "missile" meant gun. Amos then handed defendant a pistol and defendant, in turn, handed Amos his shotgun. After defendant obtained the pistol, he waved it at Sylvester, taunting him. Defendant and Sylvester continued to argue about the money. At one point Sylvester dropped a chewing gum wrapper on the floor. He stooped to retrieve the wrapper; upon resuming an upright position, defendant shot him in the chest.

Bennett further testified that immediately after Sylvester was shot, Amos said, "Get the man to the hospital, he's dying." She stated that the victim walked out of the rear door. Defendant then at-

tempted to lift him into his car and take him to the hospital; however, Sylvester fell to the ground and died.

Willie Bennett testified that just prior to the fatal shot, defendant and the victim were standing at opposite ends of a table. Based upon a demonstration in the courtroom, the court estimated that Sylvester and defendant were standing 9 or 10 feet apart just prior to the shooting. Willie also testified that Sylvester bent over to pick up a gum wrapper and that defendant "stepped up a little *** further and shot [the victim]."

Willie Bennett was interviewed by Detective Hinkle shortly after the shooting. Willie later testified. He stated he informed Detective Hinkle that he was asleep in his room and that he was awakened when he "heard a noise like a gunshot." He also told the detective that he asked his mother about the noise and she replied that it was "the door." He further stated that he told Detective Hinkle that he saw the victim holding his chest and bleeding.

On cross-examination, Willie stated that he was interviewed by Detective Hinkle in a room separate from his mother on the morning of the shooting; he told the detective that he "was asleep and awakened by a gunshot"[;] and that he then "saw Harold Sylvester holding his chest and bleeding." Willie admitted that after he had spoken with the detective he talked to his mother about what had happened, and she told him some information about the incident that he did not know previously.

Dr. Shaki Teas, a forensic pathologist and an assistant Cook County medical examiner, testified by way of stipulation that the cause of the victim's death was a gunshot wound to the chest. Dr. Teas conducted an autopsy upon the victim. Upon her examination of the decedent, Dr. Teas noted that "[t]he entrance wound showed an area of *** stippling," which are "little specks of powder that are embedded in the skin itself." Dr. Teas concluded that stippling is "an indication [of a] *** close range or intermediate gunshot *** indicating [that] the distance where the bullets entered and the barrel of the gun were fairly close *** anywhere from a [distance of a] few inches to a maximum of about 2 feet."

Shortly after the shooting, Detective Darwin Adams of the Harvey police department arrived at the scene of the incident in response to a report that shots were fired. Detective Adams called an ambulance for the victim and then spoke to Hattie Bennett. Detective Adams later testified on cross-examination that he did not see any physical evidence that Bennett's door had been broken.

Hattie Bennett later identified photographs of defendant and James Amos. On July, 5, 1986, Detective Jeff Wilkins of the Harvey police department arrested defendant at a bar in Markham, Illinois. Following his arrest, defendant initially refused to cooperate in the fingerprinting process. Amos was also arrested. The prosecutions against the two defendants were severed.

At trial, defendant testified that during the year preceding the shooting he had visited Hattie Bennett's apartment "a bunch of times" in order to purchase and sell cocaine and marijuana. He stated that on May 21, 1986, he and James Amos went to her apartment around midnight in order to sell drugs; he was armed with a loaded .38 caliber handgun at the time. He stated that Harold Sylvester arrived at the apartment sometime later and purchased a syringe from Hattie Bennett for $2. Defendant further testified that he and Sylvester began to argue over money that Sylvester owed him. During the argument, he pulled out a gun which he intended to use to strike Sylvester. However, when he attempted to hit him in the head with the gun barrel, Sylvester raised his arm to block the blow and tried to take the gun. Defendant stated that at that time, the gun discharged and a bullet struck Sylvester. The court stated that it found defendant's testimony "far less than credible." On November 3, 1987, the court found defendant guilty on all counts.

On April 12, 1988, the trial court conducted a death penalty hearing for which defendant waived a jury. The court found that defendant was eligible for the death penalty. During the second phase of the hearing, the parties entered into a stipulation regarding defendant's prior juvenile adjudications and an adult conviction. The State then presented evidence in aggravation by way of stipulation that defendant's criminal history included juvenile adjudications for felony theft. One such case resulted in defendant being sentenced to one year of probation, and the second case resulted in his being sentenced to a term of one year and eight months in the Juvenile Department of Corrections. In addition, four other cases were referred to juvenile court that resulted in defendant's detention in the Audi Home Detention Center.

The State also called Detective Ray Cobb as a witness in aggravation. Detective Cobb testified that he was previously employed as a juvenile officer for the Harvey police department and that while he was employed in that capacity he had several contacts with defendant. Detective Cobb testified that he arrested defendant and another adult on the charges of murder and armed robbery. The charges against defendant were later dismissed by the juvenile court. Detective Cobb

also testified that on six separate occasions various charges against defendant were not referred to the juvenile court but were "station adjusted." Detective Cobb stated that he attempted to help defendant by using his discretion to resolve several matters by making "station adjustments," and by speaking to defendant's parents.

On cross-examination, defense counsel asked Detective Cobb if his function as a juvenile officer was more similar to that of a law enforcement officer or to a "juvenile youth counselor." On redirect, the State asked questions regarding the officer's counseling functions. Detective Cobb stated during redirect that if defendant had requested help in finding a job or help with school work, he would have attempted to assist him.

The People also presented evidence that defendant was convicted as an adult of the felony possession of cannabis in 1986, for which he was sentenced to two years' probation and 30 days in the Illinois Department of Corrections.

Defendant's father and mother, Walter and Mary Trimble, testified on his behalf in mitigation. They identified numerous letters from defendant expressing sympathy for the victim's family, and advising his nieces and nephews of the dangers of gang affiliation and drug use.

The court sentenced defendant to concurrent prison terms of 40 years for murder (Ill. Rev. Stat. 1987, ch. 38, pars. 9—1(a)(1), (a)(3)), 30 years for home invasion (Ill. Rev. Stat. 1987, ch. 38, par. 12—11(a)(1)), 15 years for attempted armed robbery (Ill. Rev. Stat. 1987, ch. 38, par. 8—4), and 30 years for armed violence (Ill. Rev. Stat. 1987, ch. 38, par. 33A—2). Defendant now appeals.

OPINION

## I

First, defendant contends that the State violated his right to due process guaranteed by the fourteenth amendment to the United States Constitution (U.S. Const., amend. XIV), and article I, section 2, of the Illinois State Constitution (Ill. Const. 1970, art. I, §2), by using perjured testimony at trial to obtain convictions against him.

The State maintains that it did not use perjured testimony, and that any discrepancy between the testimony of the witnesses at trial and their recollections of pretrial statements was merely an inconsistency.

■■ "The burden of proving that the State knowingly used perjured testimony lies with the defendant." (*People v. Smith* (1985), 139

Ill. App. 3d 21, 30.) "Mere inconsistencies in testimony do not establish perjury or that the State knowingly used perjured evidence." (*People v. Amos* (1990), 204 Ill. App. 3d 75, 85.) " 'Inconsistencies between the testimony of witnesses and an alleged improbability of testimony go only to the weight and credibility of the evidence and fall short of establishing a knowing use of perjury.' " (*People v. Foster* (1989), 190 Ill. App. 3d 1018, 1030, quoting *People v. Tyner* (1968), 40 Ill. 2d 1, 3.) Moreover, "[m]ere conflicts in the testimony of a witness with prior statements made by him does not establish that the witness has given perjured testimony." (*People v. Henderson* (1976), 36 Ill. App. 3d 355, 384.) "[I]n order for *** testimony to constitute perjury which is reversible error, the testimony must be shown '*** by clear, convincing and satisfactory evidence to have been, not false merely, but to have been *willfully* and *purposely* falsely given ***.' " (Emphasis added.) *People v. Bounds* (1976), 36 Ill. App. 3d 330, 337, quoting *People v. Lewis* (1961), 22 Ill. 2d 68, 71.

■ On direct examination, the witness in question stated that on the night of the murder he was asleep in his bedroom, and that he was awakened when he "heard a noise like a gunshot." Willie Bennett also testified that he then asked his mother what the noise was and she told him that the sound was made by the door.

On cross-examination, Willie Bennett was questioned concerning a conversation he had at the police station with Detective Hinkle. Defendant maintains Willie Bennett stated that he told the detective he was awakened by the sound of the door slamming. This conclusion is not supported by the record. The record shows that Detective Hinkle later testified that Willie Bennett told him he was asleep and was awakened by a gunshot. Defendant has failed to meet his burden of showing either the presence of perjury or its knowing use.

In addition, defendant contends Willie Bennett "admitted" that his mother did not tell him the sound which awakened him was a door slamming until after the conversation with Detective Hinkle. Similarly, this allegation is not supported by the record. Willie Bennett steadfastly maintained at trial that at the time he was awakened he asked his mother what the noise was, and she responded that the door had slammed.

Defendant has failed to demonstrate by clear, convincing and satisfactory evidence that the testimony in question was willfully and purposely falsely given. Accordingly, we find that the State did not knowingly present perjured testimony.

## II

Defendant next argues that the trial court violated his right to due process guaranteed by the fourteenth amendment and article I, section 2, of the Illinois State Constitution when it convicted him of multiple counts of murder, home invasion, and armed violence. Defendant maintains that his constitutional rights were violated for three reasons. First, defendant contends that there may only be one conviction for murder where there was only one victim and, therefore, his conviction for felony murder based upon home invasion (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(a)(3)) must be vacated. Second, defendant argues that the convictions for home invasion (Ill. Rev. Stat. 1987, ch. 38, par. 12—11(a)(1)) and armed violence (Ill. Rev. Stat. 1987, ch. 38, par. 33A—2) must be vacated because the aforementioned offenses and the offense of murder (Ill. Rev. Stat. 1987, ch. 38, pars. 9—1(a)(1), (a)(3)) arose from the same physical act. Finally, defendant maintains that his right to due process was violated because the offense of home invasion is a lesser included offense of felony murder and that the conviction for home invasion must be reversed.

The People maintain that defendant's convictions, with the exception of the convictions for armed violence (Ill. Rev. Stat. 1987, ch. 38, par. 33A—2) and felony murder (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(a)(3)), arose from separate acts and were not included in one another; therefore, multiple convictions and concurrent sentences were proper.

■ Where there is one person murdered, there may only be one conviction. (*People v. Mack* (1984), 105 Ill. 2d 103, 137.) In addition, "multiple convictions for both armed violence and the underlying felony cannot stand where a single physical act is the basis for both charges." (*People v. Laboy-Rivera* (1984), 126 Ill. App. 3d 197, 205.) For an offense " 'to be a lesser included offense, the greater offense must include *every element* in the lesser offense plus one or more elements; the lesser offense does not have any element that is not included in the greater one. In other words, it is impossible to commit the greater offense without necessarily committing the lesser also.' " (Emphasis in original.) *People v. Garza* (1984), 125 Ill. App. 3d 182, 188, quoting *People v. Pavic* (1982), 104 Ill. App. 3d 436, 448; see also *People v. Dixon* (1984), 122 Ill. App. 3d 141, 149.

■ The People have correctly noted that one person was murdered, and therefore, there may only be one murder conviction. The People concede that defendant's conviction and sentence for felony murder (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(a)(3)) must be vacated.

In addition, we find that defendant's conviction for armed violence (Ill. Rev. Stat. 1987, ch. 38, par. 33A—2) must be vacated because this conviction was predicated upon the murder conviction and, as such, it was based upon the same act as the underlying felony. However, defendant's arguments regarding his conviction for home invasion do not pass muster. Defendant's argument that his conviction for home invasion is a lesser included offense in the felony murder conviction fails in light of the fact that we, here, vacate his conviction for felony murder.

■ In addition, defendant's alternate argument that his conviction for home invasion (Ill. Rev. Stat. 1987, ch. 38, par. 12—11(a)(1)) was based upon the same physical act as the offense of murder (Ill. Rev. Stat. 1987, ch. 38, pars. 9—1(a)(1), (a)(3)) also fails. The People correctly argue that neither home invasion nor murder is a lesser included offense of the other, since each crime contains elements which are not elements of the other.

The crime of home invasion requires an unauthorized entry into the home (Ill. Rev. Stat. 1987, ch. 38, par. 12—11(a)(1)), an element not present in murder. Similarly, murder, as charged here, requires an intentional killing (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(a)(1)), an element not present in the crime of home invasion. Accordingly, defendant's conviction for home invasion will stand.

### III

Third, defendant maintains that he did not receive a fair trial for five reasons. First, he alleges that the State improperly cross-examined him concerning his exercise of his right to avoid self-incrimination which is guaranteed by the fifth amendment to the U.S. Constitution. Defendant also alleges that the State improperly introduced evidence of his initial refusal to submit to the impression of his fingerprints. In addition, defendant asserts that the People improperly informed the trial court that his codefendant had been found guilty of felony murder (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(a)(3)) in the same case. Next, defendant claims that the State's assertion that he was convicted of an offense while in possession of a firearm was improper, incorrect, and highly prejudicial. Finally, defendant contends that he did not receive a fair trial because the People suborned perjury from its witness, Willie Bennett.

The State maintains that defendant has waived his right to appellate review of each of the aforementioned allegations by failing to preserve the issues for review. The State further maintains that none of

the above instances complained of involved prosecutorial misconduct or error on the part of the trial court.

In the alternative, the People contend that defendant received a fair trial because there is a presumption that the trial court considered only competent evidence; that it was proper to elicit evidence of defendant's conduct after the murder; that the admission of evidence that defendant refused to be fingerprinted was proper; that the People did not err by mentioning the codefendant's conviction; that there was no impropriety and no prejudice to defendant in clarifying the nature of a prior conviction, which he had already acknowledged; and that defendant received a fair trial because he has failed to demonstrate that he was convicted based upon perjured testimony. Furthermore, the State argues that any error made by the trial court was harmless.

■ The Illinois Supreme Court has mandated that it is a "general rule that the failure to raise an issue in a written motion for a new trial results in a waiver of that issue on appeal." (*People v. Enoch* (1988), 122 Ill. 2d 176, 186.) "*Both* a trial objection *and* a written post-trial motion raising the issue are required for alleged errors that could have been raised during trial." (Emphasis in original.) *Enoch*, 122 Ill. 2d at 186.

In the instant case, defendant has waived his right to appellate review of *all* of the errors alleged above because he failed to object to all but one of the alleged errors at trial, and he failed to mention any of the alleged errors in his motion for a new trial. Therefore, we have no jurisdiction to review these allegations.

IV

Next, defendant contends that the State has failed to prove him guilty beyond a reasonable doubt because the People's only two eyewitnesses were impeached by their prior statements to the police, physical evidence, and expert medical testimony. Defendant alleges that the testimony of Hattie Bennett was contradicted by her prior statements to the police and the physical evidence, and that the testimony of Willie Bennett was contradicted by both his prior statements to the police and the expert medical testimony.

The People maintain that the trial court properly found defendant guilty beyond a reasonable doubt because the corroborated testimony of the State's witnesses proved that defendant forcibly entered a home and fatally shot the victim in the course of an attempted armed robbery.

When faced with a challenge to the sufficiency of the evidence, it is not the function of a reviewing court to retry defendant. "[I]t is entirely within the province of the fact finder to determine the credibility of witnesses, the amount of weight to accord their testimony, and the appropriate inferences to be drawn therefrom." *(People v. Schorle* (1990), 206 Ill. App. 3d 748, 758; see also *People v. Phillips* (1989), 127 Ill. 2d 499, 509; *People v. Sanchez* (1986), 115 Ill. 2d 238, 261; *People v. Collins* (1985), 106 Ill. 2d 237, 261; *People v. Scherzer* (1989), 179 Ill. App. 3d 624, 638.) The relevant inquiry is " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt'." (Emphasis in original.) *(Schorle,* 206 Ill. App. 3d at 759, quoting *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789; see also *People v. Young* (1989), 128 Ill. 2d 1, 49.) "[A]fter a defendant has been found guilty, '*** *all of the evidence* is to be considered in the light most favorable to the prosecution.' " (Emphasis in original.) *(Schorle,* 206 Ill. App. 3d at 759, quoting *Jackson,* 443 U.S. at 319, 61 L. Ed. 2d at 573, 99 S. Ct. at 2789; see also *Young,* 128 Ill. 2d at 49; *Sanchez,* 115 Ill. 2d at 261; *Scherzer,* 179 Ill. App. 3d at 638.) "[A] guilty verdict shall not be disregarded on review unless it is inconclusive, improbable, unconvincing, or contrary to human experience." *Schorle,* 206 Ill. App. 3d at 758.

■ Defendant first maintains that there is a reasonable doubt as to his guilt because Hattie Bennett's testimony that he "busted through" her living room door was contradicted by Detective Adams' stipulated testimony that he did not observe any physical evidence of the door having been broken in. We find that the conflicting testimony does not raise a reasonable doubt because Ms. Bennett's testimony was later corroborated by Detective Hinkle when he testified that the door, even when locked, "could be opened with a small amount of pressure."

Defendant further charges that Willie Bennett gave contradictory testimony concerning the incident. Defendant comments upon the fact that Bennett and her son discussed the shooting, and that this action was a step taken by Hattie Bennett to ensure that the testimony of her son would be consistent with her own. However, we find that there is no evidence that Bennett coached or in any way caused her son to give perjured testimony.

Finally, the allegation that Willie Bennett's testimony was contradicted by the pathologist's finding that there was "stippling" around the victim's wound lacks merit. Dr. Teas testified that "stippling"

around the wound indicated that the fatal shot was fired from a distance of two feet or less. Willie Bennett testified that the victim and defendant were separated by a distance of roughly 10 feet. This alleged contradiction was argued before the trial court, which witnessed a demonstration of the shooting. The trial court concluded that, given all of the evidence, defendant's actions would "put him well within the range" estimated by Dr. Teas. The trial court was in the best position to make a finding with respect to this issue, and we will not set aside its finding upon appeal.

After considering the evidence in the light most favorable to the prosecution, we find that the trial court's ruling is neither inconclusive, unconvincing, improbable, nor contrary to human experience. We conclude that the court could have found defendant guilty of murder, home invasion, and attempted armed robbery beyond a reasonable doubt. The record shows that defendant forcibly entered the Bennetts' home and fatally shot the victim in the course of an attempted robbery. The court could have found the essential elements of the crimes with which defendant was charged and concluded that defendant was guilty beyond a reasonable doubt.

## V

Defendant's fifth allegation is that he is entitled to a new sentencing hearing due to the admission of irrelevant, unreliable, speculative, and prejudicial evidence. Specifically, he has four contentions. First, he asserts the testimony that he had been arrested for murder as a juvenile was irrelevant and extremely prejudicial. Furthermore, he maintains that the sentencing court improperly admitted evidence of his prior arrests as a juvenile. In addition, he argues that a judgment was erroneously entered on numerous counts arising from a single incident, and the court considered those erroneous convictions when imposing a sentence upon him. Finally, he argues that the capital sentencing statute (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(d)) is unconstitutional.

The State maintains that defendant received a proper sentencing hearing in which the court considered only relevant and reliable evidence. Specifically, the People argue that evidence of defendant's prior misconduct was proper even though such conduct did not result in a prosecution. Moreover, the People contend, the juvenile officer's testimony regarding his contact with defendant was properly admitted to show defendant's likelihood for rehabilitation. In addition, the People argue that testimony regarding Officer Cobb's willingness to act as a counselor was provoked by defendant's cross-examination of

the witness. The State also asserts that evidence of defendant's adjudication of delinquency was properly admitted. The State further maintains that a remand is not necessary since multiple convictions did not influence the trial court's determination of defendant's sentence. Finally, the State maintains that the sentencing hearing was conducted pursuant to a constitutionally valid statute.

■ The Criminal Code of 1961 requires the court to "consider *** any aggravating and any mitigating factors which are relevant to the imposition of the death penalty." (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(c).) Our supreme court has made the following ruling concerning the admissibility of evidence at a sentencing hearing:

> "The admissibility of evidence at the aggravation and mitigation phases of the sentencing hearing is not governed by the restrictive rules of evidence in effect at the guilt phase of the trial. [Citations.] The broadened standard governing admissibility of evidence allows the State and the defendant considerable leeway in presenting evidence so long as the proffered evidence is relevant and reliable [citations], as determined by the trial court in its sound discretion [citation]." *People v. Johnson* (1986), 114 Ill. 2d 170, 205.

See also *People v. Richardson* (1988), 123 Ill. 2d 322, 361-62; *People v. Brisbon* (1985), 106 Ill. 2d 342, 365.

■ During the aggravation and mitigation phase of a death penalty hearing, it is important that the sentencing court hear "the most complete information possible regarding defendant's life and characteristics." (*People v. Lego* (1987), 116 Ill. 2d 323, 347.) A court may consider a defendant's "prospect for rehabilitation and restoration to a useful place in society[ ]" when determining an appropriate sentence. (*People v. Ward* (1986), 113 Ill. 2d 516, 529.) The Illinois Supreme Court has stated that "a defendant's prior delinquency adjudications are highly relevant in determining whether the defendant's character is such that death is the appropriate punishment." (*Lego*, 116 Ill. 2d at 347.) Our supreme court has found that the Juvenile Court Act (Ill. Rev. Stat. 1983, ch. 37, par. 702—10(1)) does not bar the admission of prior juvenile adjudications in adult sentencing hearings. (*People v. Orange* (1988), 121 Ill. 2d 364, 388.) In addition, the supreme court has held that evidence of a defendant's prior misconduct which did not result in his prosecution or conviction is admissible at the aggravation and mitigation phases of his sentencing hearing if relevant and reliable. *People v. Young* (1989), 128 Ill. 2d 1, 54; *Johnson*, 114 Ill. 2d at 205; see also *Brisbon*, 106 Ill. 2d at 364-65.

A sentence may not be altered by a court of review absent an abuse of discretion. (*People v. Cabrera* (1987), 116 Ill. 2d 474, 494; *People v. Perruquet* (1977), 68 Ill. 2d 149, 153; *People v. Heredia* (1989), 193 Ill. App. 3d 1073, 1083; *People v. Whitehead* (1988), 171 Ill. App. 3d 900, 908.) "When a sentencing hearing is conducted by a trial judge acting without a jury, 'the trial judge is presumed to consider only competent and relevant evidence in determining sentence.' " (*People v. Johnson* (1986), 114 Ill. 2d 170, 205, quoting *People v. Morgan* (1986), 112 Ill. 2d 111, 144.) In order to warrant a new sentencing hearing, a defendant must affirmatively show that the trial court relied upon improper evidence in imposing the sentence. This court has found that "even where improper evidence is presented, such as a showing of the bare fact that an arrest occurred or a charge was made, we will presume that the trial court, knowing the law, considered only proper evidence in imposing sentence, and disregarded that which was improper [citation]." *People v. Garza* (1984), 125 Ill. App. 3d 182, 186.

Furthermore, this court has ruled that a court of review is not required to remand a cause for resentencing after it vacates a conviction unless the sentencing court was influenced by the other improper convictions when it sentenced defendant. *People v. Cook* (1984), 129 Ill. App. 3d 531, 536; *People v. Smith* (1984), 124 Ill. App. 3d 805, 813.

■■ We rule that defendant is not entitled to a new sentencing hearing because he has failed to meet his burden of proof. First, we find that Detective Cobb's testimony regarding defendant's arrest for murder and armed robbery was properly admitted. In Illinois, evidence of a defendant's prior arrest is admissible in a sentencing hearing even though the conduct in question did not result in prosecution or conviction. (See *People v. Young* (1989), 128 Ill. 2d 1, 54; *People v. Johnson* (1986), 114 Ill. 2d 170, 205.) Defendant contends that Officer Cobb's testimony concerning this arrest was irrelevant. We hold that his testimony was relevant because it concerned defendant's past conduct. It is essential that the sentencing court hear "complete information *** regarding defendant's life and characteristics." (*People v. Lego* (1987), 116 Ill. 2d 323, 347.) Such information enables the court to give defendant an appropriate sentence. Furthermore, defendant contends that Officer Cobb's testimony was not reliable. This contention has no merit. Officer Cobb's testimony was reliable because he had firsthand knowledge of the incident in question. We also find that his testimony was properly admitted as evidence of defendant's likelihood for rehabilitation. (See *People v. Ward* (1986), 113 Ill. 2d 516,

529.) The context of Detective Cobb's testimony indicates that evidence of defendant's prior arrests as a juvenile was offered to show his reaction to the officer's attempts to help rehabilitate him. On these occasions, Detective Cobb attempted to assist defendant by speaking to his parents, and by using his discretion to resolve the matters by "station adjustments" and referrals to juvenile court. Accordingly, we conclude that the trial court did not abuse its discretion by admitting evidence of defendant's past conduct as a juvenile which did not result in prosecution or conviction.

We find defendant's reliance upon *People v. Harris* (1989), 129 Ill. 2d 123, inappropriate. He relies upon *Harris* to support his contention that evidence of prior acts for which a defendant was not convicted are inadmissible in a sentencing hearing. The *Harris* case was not remanded because evidence of prior acts for which the defendant was not convicted were presented in a sentencing hearing, but because the trial court treated the prior conduct as a murder conviction, and then refused to allow the defendant to prove that the charges had been dismissed. (*Harris*, 129 Ill. 2d at 163.) Since this error did not occur in the instant case, *Harris* is distinguishable from the case at bar.

Furthermore, we rule that evidence of defendant's prior juvenile adjudications was properly admitted. Our supreme court has held that the introduction of delinquency adjudications in adult sentencing hearings is proper. (See *People v. Orange* (1988), 121 Ill. 2d 364, 388; *People v. Lego* (1987), 116 Ill. 2d 323, 347.) Accordingly, we find that the trial court did not abuse its discretion by admitting evidence of defendant's prior juvenile delinquency adjudications in aggravation.

██ Defendant also contends that this cause must be remanded for resentencing because a judgment was erroneously entered on numerous counts arising from a single incident, and the court considered those erroneous convictions when imposing a sentence upon him. We disagree. We have ruled here that defendant's convictions are to be vacated for felony murder (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(a)(3)) and armed violence (Ill. Rev. Stat. 1987, ch. 38, par. 33A—2). A remand for a new sentencing hearing is not necessary because there is no indication in the record that the court was influenced by the armed violence count and the second murder count when it sentenced defendant. See *People v. Cook* (1984), 129 Ill. App. 3d 531, 536; *People v. Smith* (1984), 124 Ill. App. 3d 805, 813.

██ In addition, we find that testimony regarding Detective Cobb's willingness to act as a counselor was properly admitted during the sentencing hearing. Defendant now contends that he is entitled to

a new sentencing hearing because Detective Cobb's testimony was unreliable, speculative, and irrelevant. We disagree. During cross-examination, defendant asked Detective Cobb about the nature of his duties as a juvenile officer. Officer Cobb testified that, had he asked, he would have helped defendant find employment and would have assisted him with his studies. This court has ruled that "the defendant may not predicate error on a response by the prosecutor which he himself provoked." (*People v. Carruthers* (1974), 18 Ill. App. 3d 255, 267; see also *People v. Conner* (1976), 42 Ill. App. 3d 234, 239.) Accordingly, we find that the trial court did not abuse its discretion by admitting Detective Cobb's testimony in aggravation.

 Finally, defendant argues that he is entitled to a new sentencing hearing because he was sentenced pursuant to a capital sentencing provision of the Criminal Code of 1961 (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(d)), which was deemed unconstitutional by the Federal district court in *United States ex rel. Silagy v. Peters* (C.D. Ill. 1989), 713 F. Supp. 1246. This contention has no merit. The United States Court of Appeals for the Seventh Circuit later reversed *United States ex rel. Silagy* and ruled that the Illinois death penalty statute was constitutional. (*Silagy v. Peters* (7th Cir. 1990), 905 F.2d 986.) For the reasons aforementioned, we rule that defendant is not entitled to a new sentencing hearing.

VI

Finally, defendant prays for a reduction of his sentence for the maximum term of years upon each count for which he was convicted. Defendant contends that his sentence is excessive in the context of the evidence and the mitigation.

The People maintain that the trial court properly exercised its discretion in imposing a sentence which was appropriate in light of defendant's criminal history and his violent conduct in the instant case.

In determining an appropriate sentence, "[t]he nature of the crime, protection of the public, deterrence and punishment are relevant as well as defendant's rehabilitation prospects and youth." (*People v. Whitehead* (1988), 171 Ill. App. 3d 900, 908.) The trial judge's determination of an appropriate sentence must be given great deference and weight, because the trial judge is in the best position to make a sound determination regarding punishment. (*People v. Cabrera* (1987), 116 Ill. 2d 474, 494; *Whitehead*, 171 Ill. App. 3d at 908; *People v. Partin* (1987), 156 Ill. App. 3d 365, 373.) There is a strong presumption that a trial court has considered any evidence of mitiga-

tion brought before it. (*Whitehead,* 171 Ill. App. 3d at 908; *Partin,* 156 Ill. App. 3d at 373.) Furthermore, as we noted above, a court of review will not disturb a defendant's sentence absent an abuse of discretion. *Cabrera,* 116 Ill. 2d at 494; *People v. Perruquet* (1977), 68 Ill. 2d 149, 153; *People v. Heredia* (1989), 193 Ill. App. 3d 1073, 1083; *Whitehead,* 171 Ill. App. 3d at 908.

 In the instant case, defendant has failed to demonstrate that the trial court abused its discretion when it sentenced him. The trial judge was in the best position to sentence defendant in an appropriate manner. The trial judge heard the testimony of many witnesses, including defendant. The trial court also heard and considered evidence in aggravation and mitigation. The record shows that defendant invaded the Bennett home while armed with a gun. Defendant himself stated that he entered the Bennett home in order to sell drugs. Defendant shot and killed the victim. Further, evidence in aggravation showed that defendant was a juvenile offender, and that he was later convicted as an adult for the possession of cannabis. Moreover, the court's sentence was within the range prescribed by statute. Therefore, we will not modify the trial court's sentencing of defendant.

For the aforementioned reasons, we affirm the trial court's conviction and sentence of defendant on one count of murder (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(a)(1)), home invasion, and attempted armed robbery. We vacate defendant's conviction for felony murder (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(a)(3)), and his conviction and 30-year sentence for armed violence. In addition, we grant the People's request and assess defendant $75 in costs and fees and incorporate it as part of our judgment, pursuant to *People v. Nicholls* (1978), 71 Ill. 2d 166, and *People v. Agnew* (1985), 105 Ill. 2d 275.

Affirmed in part and vacated in part.

LINN and McMORROW, JJ., concur.