THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JEROME WILSON, Defendant-Appellant.

First District (3rd Division)   No. 1—90—2332

Opinion filed December 27, 1991.

Randolph N. Stone, Public Defender, of Chicago (Elyse Krug Miller, Assistant Public Defender, of counsel), for appellant.

John M. O'Malley, State's Attorney, of Chicago (Renee Goldfarb, David Stabrawa, and Carrie Weiner, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:

Following a bench trial, defendant, Jerome Wilson, was convicted of attempted first degree murder (Ill. Rev. Stat. 1989, ch. 38, pars. 8—4, 9—1), armed robbery (Ill. Rev. Stat. 1989, ch. 38, par. 18—2), attempted armed robbery (Ill. Rev. Stat. 1989, ch. 38, pars. 8—4, 18—2), and forcible detention (Ill. Rev. Stat. 1989, ch. 38, par. 10—4). Defendant was sentenced to life in prison. We affirm in part, reverse in part, and vacate in part.

The following issues are before this court for review: (1) whether the State proved beyond a reasonable doubt that defendant had the specific intent to kill the victim; and (2) whether defendant's convictions for attempted armed robbery and three counts of armed robbery must be reversed and his sentences vacated.

Gus Siaphares, Arthur Wagg, Roger Mattioli, Douglas Jensen, Dorine Chraca, and a man named George were in Gus' Lounge bar located at 7000 West Diversey in Chicago, Illinois, on September 7, 1989, during the early morning hours. Siaphares was the bartender and owner. Wagg, Mattioli, Jensen, Chraca, and George were all patrons.

Siaphares and Mattioli testified that a man, whom they later identified as defendant, entered the bar armed with a gun at 1:30 a.m. and said, "[T]his is a stick-up." The witnesses testified that defendant then grabbed Mattioli and placed a gun to his head. Siaphares and Mattioli further testified that Siaphares told defendant to take all the money he wanted but to leave his customers alone. The witnesses stated that defendant then released Mattioli, fired his gun in the direction of the bar, jumped on top of the bar, and asked Siaphares where was his gun. Wagg and Jensen testified that defendant then told the patrons, "take off your jewelry, take out your money, [and] put it on the floor." Mattioli escaped while defendant was standing on the bar, and he subsequently informed the police of the incident. Mattioli left before defendant robbed him of any property.

After Mattioli escaped from Gus' Lounge, defendant collected property belonging to Siaphares and the bar patrons. Siaphares testified that defendant took his wallet, which contained $120, his wrist watch, and $200 from the bar cash register. Siaphares also testified that he saw defendant take money from Chraca and Jensen. Jensen

testified that defendant also took a ring and a wrist watch from him. Chraca testified that defendant robbed her of two rings. In addition, Wagg testified that defendant stole $20 from him. Wagg and Jensen testified that they saw defendant take money from George. George did not testify about the robbery.

Siaphares testified that defendant approached the front door of the tavern after he robbed the patrons and that the police told him to drop his gun. Siaphares further stated that defendant reentered the bar and tried to escape from the back door, which was locked. Chraca and Siaphares testified that defendant then grabbed Chraca's hair and that defendant pulled Chraca through the front door by her hair and announced, "I have a hostage with me." Siaphares and Chraca testified that they heard gunfire after defendant and Chraca moved outside.

Police officer Mark Sanders testified that he followed defendant and Chraca after they exited the tavern. Officer Sanders maintained that he was about 15 feet away from defendant when defendant "reached around his body *** in front of the hostage, *** aimed the revolver in my direction, *** and fired a shot." Officer Sanders was shot in his right foot. Several police officers then fired their guns at defendant. Defendant was shot at that time. Officer Sanders then approached defendant, handcuffed him, and arrested him.

After closing arguments, the trial court found defendant guilty of the attempted murder of Officer Sanders, all counts of armed robbery, the attempted armed robbery of Mattioli, and the forcible detention of Chraca.

At the sentencing hearing, defendant was found to be an habitual offender (Ill. Rev. Stat. 1989, ch. 38, par. 33B—1(a)), and sentenced to life imprisonment for the offense of attempted murder, six concurrent life imprisonment terms for each count of armed robbery, 15 years concurrent for attempted armed robbery, and seven years concurrent for forcible detention.

Defendant first contends that the State failed to prove beyond a reasonable doubt that he had the specific intent to kill Officer Sanders. The People maintain that the requisite mental state has been proven because defendant fired a gun at Officer Sanders and Officer Sanders was hit by a bullet from the same gun.

A criminal conviction will not be reversed unless the evidence is so improbable or unconvincing that it creates a reasonable doubt of the defendant's guilt. (*People v. Trimble* (1991), 220 Ill. App. 3d 338, 350; *People v. Schorle* (1990), 206 Ill. App. 3d 748, 758, 565 N.E.2d 84, 90.) When a conviction is challenged based upon the sufficiency of

the evidence, the relevant question is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789; *Trimble*, 220 Ill. App. 3d at 350; *Schorle*, 206 Ill. App. 3d at 759, 565 N.E.2d at 91.

■ A defendant must have the specific intent to commit murder in order to be found guilty of attempted murder. (Ill. Rev. Stat. 1989, ch. 38, pars. 8—4, 9—1; *People v. Mitchell* (1981), 98 Ill. App. 3d 398, 402, 424 N.E.2d 658, 661.) Intent is a state of mind which, if not admitted, may be established by proof of the surrounding circumstances including the nature of the assault, and the use of a deadly weapon. (*People v. Winters* (1986), 151 Ill. App. 3d 402, 405, 502 N.E.2d 841, 843.) The fact that a defendant fires a gun at a person supports the conclusion that said defendant did so with the intent to kill. *People v. Thorns* (1978), 62 Ill. App. 3d 1028, 1031, 379 N.E.2d 641, 643.

■ Upon viewing the evidence in the light most favorable to the State, we find that the trier of fact could have found beyond a reasonable doubt that defendant had the requisite specific intent to kill Officer Sanders. Officer Sanders testified that defendant "reached around his body and in front of the hostage, *** aimed the revolver in my direction, at me, and fired a shot." The fact that defendant fired the gun at Officer Sanders evinces defendant's intent to kill him.

■ Defendant next contends that his convictions for attempted armed robbery and three counts of armed robbery must be reversed and his sentence vacated because multiple convictions may not be based upon the same physical act, and because the State failed to prove the elements of one of the counts. A person commits an attempt when, with intent to commit a specific offense, he does any act which constitutes a substantial step toward the commission of that offense. (Ill. Rev. Stat. 1989, ch. 38, par. 8—4.) The record shows that defendant entered the bar, announced "[T]his is a stick-up," and grabbed Mattioli and held a gun to his head. Mattioli later fled the bar before defendant could rob him. In the present case, the steps taken in furtherance of the attempted armed robbery of Mattioli were the same steps defendant took in furtherance of the armed robberies of the other patrons. "[W]e cannot use the same act to carve out separate convictions." (*People v. Triplett* (1985), 138 Ill. App. 3d 1070, 1074, 487 N.E.2d 39, 42.) Accordingly, we cannot sustain defendant's conviction and sentence for attempted armed robbery.

In addition, defendant's conviction and sentence on count VI for armed robbery cannot be sustained. Defendant was convicted of counts IV and VI for armed robbery. Count IV alleged that defendant committed the offense of armed robbery when he "took watch, wallet, and United States currency from the person and presence of Gus Siaphares." Count VI alleged that defendant committed armed robbery when he "took United States Currency from the presence of Gus Siaphares."

A person commits armed robbery when he takes property from the person or presence of another by force, or by threatening the imminent use of force while he is armed with a dangerous weapon. (Ill. Rev. Stat. 1989, ch. 38, par. 18—2.) In *People v. Velleff* (1981), 94 Ill. App. 3d 820, 419 N.E.2d 89, however, we ruled that a defendant may not be convicted and sentenced on two counts of armed robbery where the defendant entered a restaurant, robbed the complainant of his wallet and removed money from the restaurant safe. The *Velleff* court, in vacating one count of armed robbery, held that "the act of taking the wallet and the contents of the safe occurred simultaneously and in the same room and therefore fall within the prohibition that multiple convictions and concurrent sentences are not permissible when more than one offense is carved from the same physical act." *Velleff*, 94 Ill. App. 3d at 826, 419 N.E.2d at 93-94.

The facts in *Velleff* are analogous to the facts in the present case. In the instant case, defendant took money, a wallet and a watch from Siaphares as well as $200 from the bar cash register simultaneously and in the same room. Therefore, the trial court erred when it convicted and sentenced defendant on two counts of armed robbery. Accordingly, defendant's conviction on count VI must be reversed and his sentence vacated.

Finally, defendant's conviction and sentence for armed robbery based on count IX must be reversed and his sentence vacated. Count IX alleged that defendant committed the offense of armed robbery when he "took United States currency from the person and presence of George Flashing." "In a criminal trial, it is the burden of the prosecution to prove beyond a reasonable doubt all material facts of the offense as charged by the indictment." (*People v. Daniels* (1979), 75 Ill. App. 3d 35, 40, 393 N.E.2d 667, 672.) In the present case, the State failed to introduce proof of the material facts alleged in the indictment. Two witnesses testified that defendant robbed a man named George. None of the witnesses, however, ever revealed George's last name. In addition, George himself did not testify about the incident. We therefore hold that the State failed to prove beyond a reasonable

doubt that the "George" whom defendant robbed was in fact George Flashing. Accordingly, defendant's conviction and sentence as to count IX cannot be sustained.

Although defendant's convictions for attempted armed robbery and three counts of armed robbery are reversed, there is no reason to remand this case for resentencing because we affirm the remaining convictions and sentencing. Accordingly, we do not remand. We affirm defendant's conviction for three counts of armed robbery and his sentence of life imprisonment as to each count. In addition, we affirm defendant's conviction and seven-year term of incarceration for forcible detention.

For the aforementioned reasons, we affirm in part, reverse in part, and vacate in part.

Affirmed in part; reversed in part and vacated in part.

CERDA, P.J., and GREIMAN, J., concur.