SIXTH DIVISION 

FILED :  09/11/98

No. 1-96-2869

THE PEOPLE OF THE STATE OF ILLINOIS )  Appeal from the

)  Circuit Court of 

Plaintiff-Appellee, )  Cook County.

)

v. )  

)

ROBERT WILLIAMS, )  Honorable 

)  Vincent M. Gaughan,

Defendant-Appellant. )  Judge Presiding.

JUSTICE ZWICK delivered the opinion of the court:

Defendant, Robert Williams, was arrested and charged with one count of residential burglary. More than six years later, he was tried in a bench trial, found guilty and sentenced to serve 12 years in the Illinois Department of Corrections. He now appeals, arguing that his sixth amendment right to speedy trial was violated and/or that his counsel was ineffective in failing to present a motion for discharge based upon the State's delay in bringing him to trial. In addition, defendant argues that the evidence was inconsistent with the indictment. Finally, defendant argues that the evidence presented at trial was insufficient to convict him. After reviewing the record and considering defendant's arguments, we affirm.
(footnote: 1)
The relevant procedural history of the case is as follows. 

On February 28, 1989, defendant was charged with one count of residential burglary. On March 15, 1989, he failed to appear for arraignment and the court granted the State's requests to have the bond forfeited and to issue a warrant for defendant's arrest, setting bail on the warrant at $75,000. 

One day later, on March 16, 1989, defendant appeared in court and pled not guilty. The court vacated the bond forfeiture and quashed and recalled the warrant. Between March 16, 1989 and August 30, 1989, the case was continued by agreement six times while defendant remained free on bond. However, on August 30, 1989, defendant failed to appear and the trial court again forfeited defendant's bond and issued a warrant for defendant's arrest, setting bond at $75,000. The case was continued by order of the court to October 2, 1989. On that date, defendant again failed to appear and the case was held on call until the next day. On October 3, 1989, due to defendant's failure to appear, the case was stricken off the call with leave to reinstate.

Defendant was subsequently arrested eight times on unrelated charges by Chicago police between October 3, 1989 and March, 1994. He was never detained, however, on the outstanding warrant. Apparently, the police did not realize that a warrant was outstanding for defendant's arrest. 

Sometime in March of 1994, an individual named Charles Williams was mistakenly arrested pursuant to defendant's warrant. On March 18, 1994, after determining that Charles Williams was not the defendant, the trial court ordered Charles Williams released and re-issued the August 30, 1989 warrant. Bail was again set at $75,000.

Defendant was again arrested on unrelated charges on November 18, 1994 and February 21, 1995. Once again, police failed to act on the outstanding warrant. 

Either in late March or early April of 1995, another man, whose name is not included in the record, was mistakenly arrested pursuant to the defendant's warrant. On May 17, 1995, the court determined that the wrong person was arrested and ordered that he be released. Defendant's warrant was corrected to reflect a new IR number, a no-bail order was set and the case was stricken off the call with leave to reinstate. 

On April 19, 1995, and again on June 2, 1995, defendant was arrested on charges unrelated to the warrant. Yet again, police failed to hold him on the warrant. Thus, defendant was arrested at least 12 times after the residential burglary. Each time, the State did not initiate proceedings on the outstanding warrant.

Some time in late July 1995, defendant was arrested pursuant to the corrected warrant. Between August 1, 1995, and May 7, 1996, the case was continued by agreement eight times. On May 7, 1996, defendant was tried in a bench trial and, as noted, was sentenced to serve a period of 12 years in the custody of the Illinois Department of Corrections.

Initially, defendant claims that his right to a speedy trial was violated where the State did not bring him to trial for more than six years after he was initially charged. The State responds that this issue is waived because defendant did not raise it in the trial court. 

It is settled law that absent plain error, "
both
 a trial objection 
and
 a written post-trial motion raising the issue are required for alleged errors that could have been raised during trial." (Emphasis in original.) (
People v. Enoch
, 122 Ill. 2d 176, 186, 522 N.E.2d 1124 (1988); see also 
People v. Nevitt
, 135 Ill. 2d 423, 553 N.E.2d 368 (1990). Although we agree with the State that defendant waived his speedy trial claim by not raising it in the trial court either by way of objection or by including it in his post-trial motion, we elect to address the issue because defendant contends on appeal that waiver of the issue was the result of the ineffectiveness of his trial counsel. See 
People v. Moore
, 263 Ill. App. 3d 1, 2, 635 N.E.2d 507 (1994). In our view, the record as it now exists is sufficient to resolve defendant's ineffective assistance claims.

The sixth amendment provides in part that "in all criminal prosecutions, the accused shall enjoy the right to a speedy *** trial." U.S. Const., amend. VI; see also Ill. Const. 1970, art. I, §8. The right to a speedy trial is applicable to the states by operation of the fourteenth amendment. See 
Klopfer v. North Carolina
, 386 U.S. 213, 18 L. Ed. 2d 1, 87 S. Ct. 988 (1968). The principal purpose of the speedy trial clause is to protect accused parties from unnecessary delay on the  part of the government in bringing them to trial. 
Barker v. Wingo
, 407 U.S. 514, 531, 92 S. Ct. 2182, 33 L.Ed.2d 101 (1972); 
United States v. Diacolios
, 837 F.2d 79, 82 (2d Cir. 1988). The issue to be decided when the defendant asserts his sixth amendment right to a speedy trial is whether the government satisfied its "constitutional duty to make a diligent good faith effort" to bring the matter to trial without unnecessary delay. See 
Smith v. Hooey
, 393 U.S. 374, 383, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969). 

The Supreme Court in 
Barker
 established a four-part test to determine whether a defendant's constitutional right to a speedy trial has been violated. The test considers: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion or failure to assert his right to a speedy trial when given the opportunity to do so; and, (4) any resulting prejudice to the defendant brought about by the delay. See 
Barker
, 407 U.S. at 530; 
People v. Singleton
, 278 Ill. App. 3d 296, 299, 662 N.E.2d 580 (1996); 
People v. Prince
, 242 Ill. App. 3d 1003, 1008, 611 N.E.2d 105 (1993). 

The first inquiry in the 
Barker
 analysis is whether the delay is "presumptively prejudicial." 
Barker
, 407 U.S. at 530-31. This term, "presumptively prejudicial," simply marks the point at which courts deem the time between the when defendant is charged and when he is tried to be long enough to trigger the remaining 
Barker
 speedy-trial enquiry. See 
Doggett v. United States
, 505 U.S. 647, 652, n.1, 120 L. Ed. 2d 520, 112 S. Ct. 2686 (1992); 
People v. Howell
, 119 Ill. App. 3d 1, 5, 456 N.E.2d 236 (1983). If the delay is characterized as being presumptively prejudicial, the remaining three factors are balanced. 
Singleton
, 278 Ill. App. 3d at 299. A delay of one year has been set as the threshold between an ordinary delay and one that is considered presumptively prejudicial. 
People v. Lock
, 266 Ill. App. 3d 185, 191, 640 N.E.2d 344 (1994). 

In this case, the delay between when the defendant was charged and when he was arrested was more than six years. This is well over the one-year period established in 
Lock
 as being presumptively prejudicial. Accordingly, we proceed to consider the remaining 
Barker
 factors.

With regard to the reason for the more than six-year delay, the defendant asserts that the State should bear the brunt of the blame because, although he admits that he was a fugitive during most of this time, the State knew or should have known where he was living. He also notes that he was arrested and taken into police custody on many occasions subsequent to his arrest on the residential burglary charge. Defendant also argues, referring to his criminal record which is included in the record on appeal, that when he was arrested on these occasions he gave the police his correct street address. Defendant relies heavily upon those cases that hold that the State bears the blame for a trial delay where its failure to seek an indicted person arises from its own faulty police procedure, negligence or incompetence. See 
Doggett
, 505 U.S. at 652; 
People v. Nichols
, 60 Ill. App. 3d 919, 925, 377 N.E.2d 815 (1978); 
Singleton
, 278 Ill. App. 3d at 300. Defendant points to the arrests of Charles Williams and a second man on his warrant as demonstrating police negligence. He also notes that the burden to provide a justifiable reason for a presumptively prejudicial delay rests with the State. 
Prince
, 242 Ill. App. 3d at 1008.

We reject defendant's argument because the criminal history report upon which he relies to establish police negligence actually supports the State's position that it was, in large part, the 
defendant
 who was to blame for the long delay in bringing him to trial. In addition to the fact that defendant deliberately failed to appear after posting bond on the burglary charges, the criminal history report indicates defendant, when repeatedly arrested during the six years that he was a fugitive, regularly gave the police false information regarding his identity. In the 12 times defendant was arrested on unrelated charges during the six years after skipping bond in the case 
sub
 
judice
, police records indicate defendant gave his name as being, in addition to Robert Williams, Robert Ellis, Frank Williams and Jerry Williams. He gave his date of birth as being, variously, September 1, 1949, September 21, 1949, September 21, 1946, September 21, 1956, and October 1, 1949. With regard to his residence, he gave, in addition to 5202 S. Loomis, the addresses of 5205 S. Loomis and 6202 S. Loomis. The State asserts that when a fugitive deliberately keeps his true identity from the police in order to evade proper identification, the State should not be blamed for failing to exercise "due diligence" in locating and bringing him to trial. We agree.  

The third factor in the 
Barker
 analysis concerns whether defendant has sought a speedy trial or acquiesced in demanding one from the State. The failure to request a speedy trial is weighed heavily against a defendant. See 
Prince
, 242 Ill. App. 3d at 1009
. Most of the cases on which defendant relies in which defendants did not make speedy trial demands involve facts in which the defendant was unaware that the State had even brought charges. See e.g., 
Doggett
 (defendant left U.S. unaware that he had been indicted on federal drug charges); 
Singleton
 (defendant who had been indicted and convicted of offenses on two other indictments was unaware that he had also been indicted on another offense stemming from the same investigation); 
People v. Beecher
, 186 Ill. App. 3d 202, 542 N.E.2d 419 (1989)(defendant was unaware that 29 months prior to his arrest a complaint had been filed against him); 
People v. Yaeger
, 84 Ill. App. 3d 415, 406 N.E.2d 555 (1980)(defendant charged with drug offenses but does not learn of charges until arrested 31 months later); 
People v. Jennings
, 11 Ill. App. 3d 940, 298 N.E.2d 409 (1973)(defendant not aware of mob action charges until he was arrested 258 days later). In such circumstances, courts find that defendant cannot be blamed for failing to pursue a speedy trial claim and consider the third factor of the 
Barker
 analysis to be irrelevant. 
Singleton
, 278 Ill. App. 3d at 300.  In contrast, in this case, defendant knew that charges were pending against him, yet actively avoided identification. 

The fourth and final 
Barker
 factor requires that we consider the prejudice suffered by the defendant as a result of the delay. As the defendant suggests, many of the cases have noted that where the delay between the charge and trial is more than one year, prejudice is generally presumed. In 
Singleton
, for example, this court stated that a delay of 50 months was so protracted as to require a presumption of prejudice. 
Singleton
, 278 Ill. App. 3d at 301. The court implied that such a long delay makes the presumption of prejudice nearly unrebuttable.. 
Singleton
, 278 Ill. App. 3d at 301, citing 
Doggett
, 505 U.S. at 655-56.

Even were we to presume defendant was prejudiced in his trial by the delay, however, it is clear that even a long delay such as six years cannot alone carry a sixth amendment claim without regard to the other 
Barker
 criteria. 
Doggett
, 505 U.S. at 655-56. In this case the record indicates that the defendant did not request a speedy trial and actively attempted to frustrate the police in their attempt to arrest him on the outstanding warrant related to the burglary charges. In such circumstances, defendant's arguments regarding the State's failure to provide him with a speedy trial are clearly meritless. Accordingly, we reject them. 

We turn to defendant's ineffective assistance of counsel claim which, in light of the above analysis, must also fail. Because defendant's sixth amendment claim is without merit, it follows defendant's trial counsel did not act unreasonably in failing to present a motion to discharge defendant on the basis of a sixth amendment violation. "Defense counsel has no duty to advance specious claims of constitutional deprivation."  
People v. Gray
, 95 Ill. App. 3d 879, 420 N.E.2d 856 (1981).

We next consider defendant's claim that the evidence at trial was inconsistent with the indictment. Defendant notes that the indictment handed down against him charged him with the residential burglary of the "dwelling place of Gilbert Vasquez." At trial, however, the State offered testimony that Christopher Pacholoski had been burglarized, not Gilbert Vasquez. Vasquez, Pacholoski's neighbor, testified at trial that he witnessed defendant and two others running from Pacholoski's apartment just before police arrested defendant. 

Our supreme court addressed a similar issue in the case of 
People v. Rothermel
, 88 Ill. 2d 541, 431 N.E.2d 378 (1982). In that case, the court considered whether the variance between the indictment alleging entry into the residence of two women, and the proof which established that it was actually their mother who was the owner of the home, warranted reversal. The court determined that ownership of the burglarized premises is not an essential element of the charging instrument. 
Rothermel
, 88 Ill. 2d at 544-45. The court then proceeded to consider the questions of whether the charging instrument was "sufficiently particular in alleging that the defendant had no authority to enter the house" and whether he "possessed the requisite intent to commit the burglary." 
Rothermel
, 88 Ill. 2d at 545. The court also considered whether the inaccurate allegation of ownership in the indictment had the effect of misinforming the defendant of the nature of the charges against him and whether the mistake could have the effect of exposing the defendant to a second prosecution for the same burglary. 
Rothermel
, 88 Ill. 2d at 547-48. The court concluded that because Rothermel was otherwise "fully apprised of the charge against him," the indictment was sufficient to support the conviction. 
Rothermel
, 88 Ill. 2d at 547.

Rothermel
 teaches that, to be fatal, a variance between the charging instrument and the proof at trial must be material 
and
 be of such character as may mislead the accused in making his defense or expose him to double jeopardy. 
People v. Santiago
, 279 Ill. App. 3d 749, 665 N.E.2d 380 (1996). When the variance in the charging instrument is being attacked for the first time on appeal, the charging instrument will be held sufficient if it apprised the accused of the precise offense and  charged with sufficient specificity so as to allow defendant to prepare his defense and to allow him to plead a resulting conviction as a bar to any future prosecutions arising out of the same conduct. 
Santiago
, 279 Ill. App. 3d at 752. 

Here, the variance between the indictment and the proof at trial was neither material nor prejudicial to the defendant. Gilbert Vasquez, the person mistakenly named in the indictment as the victim, was, in fact, an eyewitness to the residential burglary. At trial, defendant never claimed he was surprised or prejudiced by the proof that Pacholoski was the actual victim. Nor did the defendant claim that the proof varied from the information provided in discovery by the prosecution. Indeed, on appeal, defendant neither claims nor shows that he was prejudiced in the preparation of his defense by the inaccurate naming of the victim. Furthermore, by using the trial transcripts and by referring to the record, the defendant would be able to use his conviction as a bar to any future prosecution by the State.

In support of his position, defendant cites 
People v. Bueno
, 35 Ill. 2d 545, 221 N.E.2d 270 (1966), 
People v. Smith
, 18 Ill. App. 3d 851, 310 N.E.2d 796 (1974) and 
People v. Wilson
, 224 Ill. App. 3d 364, 586 N.E.2d 547 (1991). As the State points out, however, 
Bueno
 and 
Smith
 were decided well before the supreme court adopted its analysis 
Rothermel
. Although 
Wilson
 was decided more recently, we note that the court in that case failed to consider the impact of 
Rothermel
. To the extent that 
Wilson
 is inconsistent with 
Rothermel
, we decline to follow it.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

AFFIRMED.

GREIMAN, J., and QUINN, J., concur.

FOOTNOTES
1:     
Consistent with Supreme Court Rule 23, we elect not to publish our disposition with regard to defendant's sufficiency of the evidence claim.