THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIAM RAMOS, Defendant-Appellant.

Second District    No. 2—99—0704

Opinion filed September 8, 2000.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, and James K. Leven, of Chicago, for appellant.

David R. Akemann, State's Attorney, of St. Charles (John X. Breslin and John M. Wood, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GEIGER delivered the opinion of the court:

Following a bench trial, the defendant, William Ramos, was found guilty of violating an order of protection (720 ILCS 5/12—30 (West 1998)) and sentenced to an extended term of four years' imprisonment. On appeal, the defendant argues that (1) he was not proved guilty beyond a reasonable doubt; (2) his conviction must be reversed because the State's proof at trial did not conform to the facts alleged in the indictment; and (3) the statutory penalties prescribed within the offense of violating an order of protection are unconstitutionally vague. We affirm.

On September 16, 1998, the defendant was charged by indictment with one count of residential burglary (720 ILCS 5/19—3 (West 1998)) and one count of violating an order of protection (720 ILCS 5/12—30 (West 1998)). The latter charge alleged that on July 17, 1998, the defendant violated an order of protection by entering the residence of his former wife, Claudia Ramos.

At trial, the State introduced into evidence a copy of an emergency order of protection that had been entered by the circuit court of Kane County on July 10, 1998. The order prohibited the defendant from entering or remaining in Claudia Ramos's residence located at 1269 Nantucket Road in Aurora. The order was in effect between July 10, 1998, and July 28, 1998. The trial court admitted the copy of the order into evidence.

Claudia Ramos testified that on July 12, 1998, at 8:30 p.m., she telephoned her sister and learned that the defendant was on his way to her home. Claudia ran out her front door and got into her car. At that time, the defendant had arrived at the residence and had gotten out of his car. The defendant then got into Claudia's car and told her that he knew that she had obtained an order of protection and that she was going to try to put him in jail.

Claudia further testified that on July 15, 1998, she placed a telephone call to her residence and that the defendant answered the call. Claudia had not given the defendant permission to be in her residence on that date. Claudia telephoned the police to advise them that she had an order of protection and that the defendant was not supposed to be in her residence.

On July 17, 1998, when Claudia arrived home, she saw the curtains in the window move. Claudia believed that the defendant was inside. Claudia drove to a pay phone and called the police. Once the police arrived at her residence, Claudia let a police officer in the back door. The police found the defendant upstairs and arrested him. Once again, Claudia testified that she had not given the defendant permission to be in her home.

On cross-examination, Claudia acknowledged that she had never given the defendant a copy of the order of protection. Claudia also acknowledged that she did not give a copy of the order to the police on July 15, 1998, when she had called them to report that the defendant was in her residence.

Officer Gerald Marrero of the Aurora police department testified that on July 15, 1998, he received a dispatch for a possible violation of an order of protection at the address of 1269 Nantucket. Officer Marrero drove to the scene with his partner, Officer John Saltigeral. When they arrived at the scene, they knocked on the door but there was no

answer. Officer Marrero heard footsteps in the residence and instructed Officer Saltigeral to go to the back door. Officer Marrero remained near the front of the house, and a few moments later he observed Officer Saltigeral come through the front door with the defendant.

Officer Marrero placed the defendant under arrest for violating an order of protection and transported the defendant to the Aurora police station. The defendant told Officer Marrero that he did not know that there had been an order of protection entered against him. At the station, Officer Marrero attempted to confirm the existence of the order of protection with the Kane County sheriff's department, but the sheriff's department could not locate the order. Officer Marrero released the defendant from custody because he could not confirm or locate the order of protection. Prior to releasing the defendant, Officer Marrero instructed him to stay away from Claudia and her residence at 1269 Nantucket. Twenty minutes after the defendant was released, the sheriff's department contacted Officer Marrero to advise him that the order of protection had been located and that the order was valid. On cross-examination, Officer Marrero acknowledged that no copy of the order of protection was given to the defendant on July 15, 1998.

Officer Kevin Jenkins of the Aurora police department testified that on July 17, 1998, he drove to 1269 Nantucket in response to a dispatch concerning a possible violation of an order of protection. Officer Jenkins entered the residence through the back door and announced the presence of a police officer. Officer Jenkins found the defendant under a mattress in one of the second-floor bedrooms. The defendant was placed under arrest for violating an order of protection.

The State and the defendant stipulated to a certified copy of the defendant's previous conviction on May 30, 1996, of violating an order of protection. The certified copy was entered into evidence.

The defendant testified that he had been living at 1269 Nantucket late in June and early in July. At this time, Claudia had moved out of the residence with their children and moved into her mother's house. On July 15, 1998, as he was going out of the house, he was arrested by two police officers. He had to remain at the police station for two hours before he was finally released. While at the police station, no officer showed the defendant a copy of the July 10, 1998, order of protection or read to him the contents of the order. The defendant also testified that no officer instructed him to collect his clothing and property and move out of the residence.

The defendant further testified that on July 17, 1998, he was arrested again. At the time of his arrest, the defendant was sleeping in his underwear, and he hid under the mattress because he was embarrassed and confused.

At the close of evidence the trial court found the defendant guilty of violating an order of protection (720 ILCS 5/12—30 (West 1998)), but not guilty of the offense of residential burglary (720 ILCS 5/19—3 (West 1998)). As to the former charge, the trial court noted that the State was not required to prove that the defendant had been served a copy of the order of protection; rather, the State was only required to prove that the defendant had "acquired actual knowledge of the contents of the order" (720 ILCS 5/12—30(a)(2) (West 1998)). The trial court found that, prior to July 17, 1998, the defendant knew that an order of protection had been entered against him and that he was not permitted in the residence at 1269 Nantucket. The trial court found that the defendant was aware of this fact as a result of his communications with Claudia and Officer Marrero. The trial court found that, despite this knowledge, the defendant nonetheless went into the residence at 1269 Nantucket on July 17, 1998.

Following a sentencing hearing, the defendant was sentenced to an extended term of four years' imprisonment. The defendant subsequently filed a timely notice of appeal.

The defendant's first contention on appeal is that he was not proved guilty beyond a reasonable doubt. The defendant argues that the State failed to prove that he had acquired knowledge of the contents of the order of protection. The defendant argues that, although he might have acquired knowledge as to one of the acts prohibited under the order, he had not been told of the entire contents of the order.

■ When considering a challenge to the sufficiency of the evidence, it is not the function of this court to retry the defendant. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Collins*, 106 Ill. 2d at 261. The determination of the weight to be given to the witnesses' testimony, their credibility, and the reasonable inferences to be drawn from the evidence are the responsibility of the fact finder. *Collins*, 106 Ill. 2d at 261.

■ One commits the offense of violating an order of protection by committing an act that was prohibited by a court in a valid order of protection entered pursuant to the Illinois Domestic Violence Act of 1986 (750 ILCS 60/214 (West 1998)). 720 ILCS 5/12—30(a)(1) (West 1998). However, section 12—30(a)(2) of the Criminal Code of 1961 (the Code) provides that a defendant cannot be charged with violating an order of protection unless he has been "served notice of the contents of the order, pursuant to the Illinois Domestic Violence Act of

1986 ***, or otherwise has acquired actual knowledge of the contents of the order." 720 ILCS 5/12—30(a)(2) (West 1998).

In the instant case, the parties do not dispute that the State proved the existence of a valid order of protection that prohibited the defendant from entering the residence at 1269 Nantucket. Nor is there any dispute that the defendant's presence at the residence at 1269 Nantucket on July 17, 1998, was a violation of the order of protection. Rather, as noted above, the focus of the defendant's argument centers on whether he had acquired actual knowledge of the contents of the order prior to his arrest. The defendant asserts that the State was obligated to prove that he had acquired knowledge of the entire contents of the order of protection, including the date the order was issued, the date the order expired, the possible penalties for violation of the order, and when the next status date was scheduled.

Contrary to the defendant's assertions, we do not believe that section 12—30(a)(2) of the Code requires that the defendant acquire knowledge of the entire contents of the order of protection prior to being charged with the offense. Rather, we believe that the statute requires only that the defendant have specific knowledge of the provisions of the order that he is charged with violating. As evidenced by its plain language, the purpose of the statute is to prevent the State from prosecuting a defendant for violating an order of protection in instances where the defendant does not know that an order of protection has been entered or does not know what conduct is prohibited by the order.

Although the defendant correctly notes that he is entitled to receive formal service of an order of protection and to be advised of certain rights, these requirements are contained in sections 112A—21 and 112A—22 of the Code of Criminal Procedure of 1963 (725 ILCS 5/112A—21, 112A—22 (West 1998)). As noted above, compliance with these service provisions is not required before a defendant may be charged with violating an order of protection. 720 ILCS 5/12—30(a)(2) (West 1998). Rather, the State need only show that the defendant had otherwise acquired knowledge of the contents of the order. 720 ILCS 5/12—30(a)(2) (West 1998). We agree with the State that a verbatim reading of the entire contents of the order of protection is not necessary in order to put the defendant on notice of what conduct is prohibited. If the legislature had truly intended that the defendant be informed of the entire contents of the order, then we believe that the statute would have specifically required that a defendant be served a copy of the order of protection before he could be charged with committing a violation of the order. As the legislature has not chosen to do so, we decline the defendant's request to incorporate such a require-

ment into the statute. Instead, we conclude that the statute requires only a showing that the defendant knowingly violated a provision of the order of protection.

■ After a careful review of the record, we conclude that the evidence proved beyond a reasonable doubt that the defendant knowingly violated a provision of the order of protection. On July 15, 1998, Officer Marrero told the defendant at the Aurora police station that there was an order of protection in effect that prohibited the defendant from entering the residence of Claudia Ramos. Additionally, on July 13, 1998, the defendant and Claudia Ramos also had a conversation concerning the existence of the order of protection that had been entered against the defendant. During this conversation, the defendant acknowledged that there was an order of protection in effect. Based on these communications, the defendant knew that an order of protection had been entered that prevented him from going upon the premises at 1269 Nantucket. The evidence demonstrated that, despite this actual knowledge, the defendant entered the residence at 1269 Nantucket on July 17, 1998. We believe that such evidence was sufficient to convict the defendant of violating an order of protection.

■ The defendant's second contention on appeal is that his conviction must be reversed because the State's proof at trial did not conform to the facts alleged in the indictment. The indictment alleged that the defendant had been "served with notice of the contents of an order of protection number 98 OP 442." As detailed above, the evidence introduced at trial indicated that, although the defendant may have been told about the entry of the order of protection, he was not served a copy of the order prior to his arrest.

To be fatal, a variance between the charging instrument and the proof at trial must be material and be of such a character as may mislead the accused in making his defense or expose him to double jeopardy. *People v. Williams*, 299 Ill. App. 3d 143, 151 (1998). We do not believe that the variance between the charge and the proof in the instant case was so material as to necessitate a new trial. Despite the allegation in the indictment, the parties never disputed that the defendant was not served with a copy of the order of protection. Rather, the crux of the trial centered upon whether the defendant had otherwise received knowledge of the contents of the order.

A review of the record reveals that the defendant argued at trial that he never received actual knowledge that an order of protection had been entered against him. The defendant testified that he was not informed of the contents of the order of protection during his conversations with various officers of the Aurora police department. The defendant also testified that the officers never told him to move out of the

residence at 1269 Nantucket. We therefore do not believe that the indictment misled the defendant in preparing his defense; nor do we believe that the defendant would have prepared his defense any differently had the indictment alleged that he had been orally informed as to the contents of the order of protection. See *People v. Jones*, 245 Ill. App. 3d 674, 677 (1993).

Neither has the defendant been exposed to the possibility of double jeopardy. The indictment clearly identifies the charged offense and the date the offense was alleged to have occurred. If any future prosecution were attempted, prior prosecution on the same facts could be proved by resort to the record. See *People v. Johnson*, 65 Ill. 2d 332, 339 (1976). We therefore reject the defendant's assertions that he has been prejudiced by the variance between the indictment and the proof adduced at trial.

In so holding, we note that the defendant's reliance upon *People v. Daniels*, 75 Ill. App. 3d 35 (1979), is unpersuasive. In *Daniels*, not only was there a variance between the charging instrument and the evidence adduced at trial, but the reviewing court also found that the evidence adduced at trial was circumstantial and insufficient to prove the defendant guilty of the charged offense beyond a reasonable doubt. *Daniels*, 75 Ill. App. 3d at 40-41. Nor are we persuaded by the defendant's reliance upon *People v. Bueno*, 35 Ill. 2d 545 (1966), as the analysis contained therein has not been followed by other Illinois courts. See *People v. Rothermel*, 88 Ill. 2d 541, 547 (1982); *Williams*, 299 Ill. App. 3d at 151.

■ The defendant's final contention on appeal is that the statutory penalties prescribed within the offense of violating an order of protection are unconstitutionally vague. The defendant argues that the statute creates multiple and conflicting penalties for the same crime. The statutory provisions in question provide as follows:

> "Violation of an order of protection *** is a Class A misdemeanor. Violation of an order of protection *** is a Class 4 felony if the defendant has any prior conviction under this Code for domestic battery (Section 12—3.2) or violation of an order of protection (Section 12—30). The court shall impose a minimum penalty of 24 hours imprisonment for defendant's second or subsequent violation of any order of protection; unless the court explicitly finds that an increased penalty or such period of imprisonment is manifestly unjust." 720 ILCS 5/12—30(d) (West 1998).

The defendant argues that the statutory language making a second or subsequent violation of an order of protection a Class 4 felony is inconsistent with the statutory language providing that a minimum penalty of 24 hours' imprisonment shall be imposed for a second or

subsequent violation. The defendant notes that the sentencing range for a Class 4 felony is a term of imprisonment "not less than 1 year and not more than 3 years." 730 ILCS 5/5—8—1(a)(7) (West 1998). The defendant therefore argues that the statute is vague and lacks a definite standard as to whether the minimum penalty for a subsequent offense is one year's imprisonment or 24 hours' imprisonment or less than 24 hours' imprisonment if the trial court find that 24 hours' imprisonment is unjust. In support of his vagueness argument, the defendant also notes that, although the notice requirements contained in section 112A—21(c) of the Code of Criminal Procedure of 1963 (725 ILCS 5/112A—21(c) (West 1998)) require that an order of protection shall conspicuously warn respondents that a knowing violation of the order is a Class A misdemeanor, it does not require that the respondent be warned that a second violation of an order of protection is a Class 4 felony.

Due process requires that a statute not be so vague that persons of common intelligence must necessarily guess at its meaning or application. *People v. Hickman*, 163 Ill. 2d 250, 256 (1994). A sentencing provision may be void for vagueness if it does not state with sufficient clarity the consequences of violating a given criminal statute. *Hickman*, 163 Ill. 2d at 256. However, mathematical certainty in language is not required, and a statute satisfies due process as long as (1) the statute's prohibitions are sufficiently definite, when measured by common understanding and practices, to give a person of ordinary intelligence fair warning as to what conduct is prohibited; and (2) the statute marks boundaries sufficiently distinct for judges and juries to administer the law fairly in accordance with the intent of the legislature. *Hickman*, 163 Ill. 2d at 256-57.

Further, a court presumes that a statute is constitutional. Accordingly, the party challenging the statute has the burden of clearly establishing its constitutional infirmity. *Hickman*, 163 Ill. 2d at 257. A court will construe a statute as constitutional if it can be done reasonably. *Hickman*, 163 Ill. 2d at 257. This principle also applies to a sentencing provision. *Hickman*, 163 Ill. 2d at 257.

Contrary to the defendant's assertions, we believe that section 12—30(d) of the Code provides fair warning of the possible penalties for violating an order of protection. The statute plainly states that a violation of an order of protection constitutes a Class A misdemeanor unless the defendant has a prior conviction for violating an order of protection or domestic battery, in which case the violation is a Class 4 felony. 720 ILCS 5/12—30(d) (West 1998). A trial judge is required to impose a minimum of 24 hours' imprisonment upon a second or subsequent violation of an order of protection, provided that such a penalty is not unjust. 720 ILCS 5/12—30(d) (West 1998).

Such a sentencing scheme is not inconsistent. The defendant fails to recognize that a defendant who is convicted of a Class 4 felony does not face mandatory imprisonment; probation is also a sentencing possibility. 730 ILCS 5/5—5—3(b)(1) (West 1998). The statute therefore requires that the minimum penalty for a second or subsequent violation of an order of protection be 24 hours' imprisonment, unless the trial court finds that such an imposition would be unjust. We do not find this statutory language vague or ambiguous. Rather, we believe that the sentencing provision states with sufficient clarity the consequences of violating section 12—30.

Nor do we believe that the notice requirements contained in section 112A—21(c) of the Code of Criminal Procedure of 1963 are inconsistent with this sentencing scheme. Under these requirements, the respondent is accurately advised that a violation of an order of protection is a Class A misdemeanor. 725 ILCS 5/112A—21(c) (West 1998). Although the respondent is not informed of the possibility of enhanced penalties due to prior convictions, we are aware of no authority that would require such a notification. Additionally, we note that the defendant in the instant case cannot argue that he was misled by the contents of the order of protection, as he never received a copy of the order prior to his arrest. For all of these reasons, we reject the defendant's constitutional argument.

For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

COLWELL and RAPP, JJ., concur.