# Illinois Official Reports

## Appellate Court

---

*People v. Brzowski*, **2015 IL App (3d) 120376**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WALTER J. BRZOWSKI, Defendant-Appellant. |
| District & No. | Third District<br>Docket Nos. 3-12-0376, 3-12-0477 cons. |
| Rule 23 Order filed<br>Motion to publish<br>allowed<br>Opinion filed | April 8, 2015<br><br>May 18, 2015<br>May 18, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Will County, Nos. 10-CF-1923, 10-CF-2494; the Hon. Robert P. Livas, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Jeffrey Svehla (argued), of State Appellate Defender's Office, of Chicago, for appellant.<br><br>James Glasgow, State's Attorney, of Joliet (Thomas D. Arado (argued), of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

| Panel | JUSTICE LYTTON delivered the judgment of the court, with opinion. Presiding Justice McDade and Justice Wright concurred in the judgment and opinion. |

**OPINION**

¶ 1    Defendant Walter Brzowski was charged with two counts of unlawful violations of an order of protection for sending mail to his two sons. Three months later, he was charged with an additional two counts of unlawful violations of an order of protection for sending mail to his ex-wife. Two separate trials were held. Defendant represented himself at both trials. Defendant was convicted of all four charges. He was sentenced to one year in prison on the first two charges of unlawful violations of an order of protection and two concurrent three-year terms of imprisonment on the latter two charges. Defendant appeals, arguing that (1) he was not proven guilty beyond a reasonable doubt, (2) he was not adequately informed of the contents of the order of protection, (3) the order of protection was invalid, (4) he was not properly instructed regarding his waiver of counsel, (5) he was improperly denied his right to counsel, and (6) the court allowed improper arguments and inadmissible evidence at his trials. We reverse and remand, finding that the trial court failed to instruct defendant regarding his waiver of counsel and denied him his right to counsel at both trials.

¶ 2                                                           FACTS
¶ 3    On April 12, 2007, the circuit court of Will County granted an emergency order of protection to Laura Brzowski, a/k/a Laura Zasadny, on her own behalf and on behalf of her children, E.B. and B.B. The order provides in part: "[Defendant] is ordered to stay ___ away from Petitioner and/or other protected person(s)." The order further provides: " 'Stay away' means for the respondent to refrain from both physical presence and nonphysical contact with the petitioner whether direct, indirect (including, but not limited to, telephone calls, mail, email, faxes, and written notes), or through third parties who may or may not know about the order of protection." The order states that it "shall be effective until May 3, 2007."

¶ 4    On May 3, 2007, the court entered a plenary order of protection extending the emergency order of protection "on the same terms and conditions" as the prior order of protection until May 1, 2009. Defendant was present in court on May 3, 2007, and served with the plenary order.

¶ 5    On May 1, 2009, the trial court extended the plenary order of protection until April 28, 2011. Defendant was not in court on May 1, 2009. However, an "Order of Protection Short Form Notification" was served on defendant on June 26, 2009. The notification form referred to the case number for the emergency order of protection entered against defendant on April 12, 2007.

¶ 6    In September 2010, defendant was charged with two counts of unlawful violation of an order of protection. 720 ILCS 5/12-30(a) (West 2010). Count I alleged that defendant intentionally committed an act prohibited by an order of protection "by making contact with

B.B., a minor and protected party, by mail." Count II alleged that defendant violated the order of protection "by making contact with E.B., a minor and protected party, by mail."

¶ 7 In December 2010, defendant was charged with two additional counts of unlawful violation of an order of protection. 720 ILCS 5/12-30(a) (West 2010). The counts alleged that defendant intentionally committed an act in violation of the 2009 order of protection by "making contact with Laura A. Zasadny, a protected party, by mail" on November 27, 2010, and December 1, 2010.

¶ 8 Two separate trials were held. The first trial was held on the September 2010 charges for defendant sending mail to B.B. and E.B. The second trial was held on the December 2010 charges for defendant sending mail to Zasadny.

¶ 9 An assistant public defender was assigned to represent defendant at his first trial. That attorney filed a motion for a fitness hearing to determine defendant's fitness prior to trial. A different assistant public defender, Edward Jaquays, represented defendant in the fitness proceeding. Defendant was evaluated by Dr. Syed Ali in June 2011. In an interview with Dr. Ali, defendant stated that he was charged with two violations of an order of protection, which were serious charges "[b]ecause they invoke the felony status." He also stated that, if found guilty, he "could be sentenced up to between 1 and 3 years in a State Correctional Facility." At defendant's fitness hearing, the trial judge referred to Dr. Ali's report and found defendant fit.

¶ 10 In August 2011, defendant filed a "Motion for Reassignment of Counsel." A hearing was held on the motion two weeks later. At the hearing, defense counsel presented a letter from the Will County public defender that stated:

> "With regard to the Brzowski matter, our position is that he can remove our office at any time and go forward pro se or hire private counsel, but once he discharges our office he does not get another assistant public defender. He will not choose who his appointed lawyer will be. If he wants the services of our office then he must keep the excellent attorney that he already has."

The court then informed defendant that he had three options: (1) keep his assigned public defender, (2) represent himself, or (3) hire another attorney. Defendant informed the court that he was choosing to represent himself but also asked for time to hire counsel. The trial court gave defendant time to obtain counsel, but defendant never did.

¶ 11 Prior to trial, the trial court *sua sponte* appointed Jaquays as standby counsel for defendant. At trial, Zasadny testified that on September 10, 2010, she found two envelopes in her mailbox addressed to her sons. She recognized defendant's handwriting on the envelopes, as well as his return address. She opened the envelopes and found cards, a letter, and a check for each son. Her sons were not present when she opened the cards, and she never showed the cards to them.

¶ 12 Vito Anguiolo, a lieutenant in the court services department of the Cook County sheriff's office, testified that he served defendant with an order of protection short form notification on June 26, 2009. According to the form and Anguiolo's testimony, Anguiolo told defendant the restrictions placed on him including that he "must not abuse, harass, intimidate or harm the petitioner or other protected parties" and "must stay away from petitioner and protected parties at additional locations." Anguiolo told defendant that the short form was not the entire order but that he could obtain the full order at the Will County courthouse.

¶ 13 After the State presented its witnesses, defendant asked that his standby counsel be allowed to represent him for the remainder of the case. The State objected. The trial court denied

defendant's request. Defendant then argued a motion for directed verdict, which the trial court denied. After both parties rested and the jury instruction conference was complete, the trial court excused Jaquays as standby counsel.

¶ 14    The jury found defendant guilty of both counts against him. Defendant filed a motion for a new trial in which he argued that he was not proven guilty beyond a reasonable doubt, that the court erred in denying his motion for a directed verdict, and that the court erred in not allowing Jaquays to represent him at trial. The court denied defendant's motion and sentenced defendant to one year in prison.

¶ 15    Before defendant's second trial, defendant indicated that he wanted to be represented by Jaquays. The trial judge told defendant that the public defender "has at this point refused to have anything further to do with this issue in your case." The judge told defendant that Jaquays could represent him only if he paid Jaquays or Jaquays agreed to represent him *pro bono*.

¶ 16    One week before defendant's second trial was set to begin, defendant again requested that he be represented by Jaquays. The judge told defendant that he had the following choices: (1) hire his own attorney, (2) get someone to represent him for free, or (3) represent himself. Defendant proceeded *pro se*.

¶ 17    At trial, Zasadny testified that on November 27, 2010, she found a number of documents from defendant addressed to her in her mailbox at her home. On December 1, 2010, she found another set of documents in her mailbox from defendant. She recognized defendant's handwriting on the envelopes.

¶ 18    Kevin Spencer, a sheriff's deputy, testified that he met with Zasadny on November 27, 2010. She showed him the documents she found in her mailbox, and Spencer "verified" with "dispatch" that there was a valid order of protection in place. James Martin, another sheriff's deputy, testified that he met with Zasadny on December 10, 2010. She showed him the documents she found in her mailbox, and Martin "verified" with "dispatch" that there was a valid order of protection in place.

¶ 19    Anguiolo testified that he served defendant with a "short form" notification of the 2009 order of protection on June 26, 2009. Anguiolo told defendant the restrictions placed on him, including that he "must not abuse, harass, intimidate or harm the petitioner or other protected parties" and "must stay away from petitioner and protected parties at additional locations."

¶ 20    The jury found defendant guilty of both counts against him. Defendant filed a motion for a new trial, arguing that (1) the State failed to prove him guilty beyond a reasonable doubt, (2) the court erred in allowing certain jury instructions, (3) the prosecutor made improper statements in closing argument, and (4) he was denied his sixth amendment right to counsel. The court denied the motion and sentenced defendant to three years' imprisonment for each conviction, to be served concurrently.

¶ 21                                    ANALYSIS
¶ 22                                        I
¶ 23    Defendant first argues that he was not proven guilty beyond a reasonable doubt of violating the order of protection in September 2010 because his sons never saw or knew about the mail he sent to them.

¶ 24    When considering a challenge of the sufficiency of the evidence, it is not the function of this court to retry the defendant. *People v. Ramos*, 316 Ill. App. 3d 18, 22 (2000). The relevant

question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

¶ 25    One commits the offense of violating an order of protection when he (1) commits an act that was prohibited by a court in a valid order of protection or fails to commit an act ordered by an order of protection, and (2) has been served notice of or otherwise acquired actual knowledge of the contents of the order of protection. 720 ILCS 5/12-30(a) (West 2010); *People v. Hoffman*, 2012 IL App (2d) 110462, ¶ 13. The statute incorporates by reference a trial court's order as an element of the offense. *People v. Davit*, 366 Ill. App. 3d 522, 527 (2006).

¶ 26    In this case, the State charged defendant with violating the order of protection's "stay away" provision, which required defendant to "refrain from both physical presence and nonphysical contact with the petitioner whether direct, indirect (including, but not limited to, telephone calls, mail, email, faxes, and written notes)," by contacting his sons by mail. The language of the order expressly prohibits defendant from mailing letters to his sons. Defendant violated that provision when he sent mail to his sons, regardless of whether they actually received the mail.

¶ 27    Defendant relies on *Davit*, 366 Ill. App. 3d 522, to argue that the State could not assert that he violated the "stay away" provision. However, that case is inapposite. In *Davit*, the appellate court held that defendant could not be found guilty of violating the "stay away" provision of the order of protection because he was charged with violating a different provision of the order of protection, and the jury was not instructed on the "stay away" provision. Here, defendant was charged with violating the "stay away" provision, the State argued that defendant violated the "stay away" provision, and the jury was instructed about the "stay away" provision. Therefore, the State proved defendant guilty beyond a reasonable doubt of violating the order of protection.

¶ 28                                                    II

¶ 29    Defendant next argues that his convictions for unlawful violations of an order of protection cannot stand because he was not informed of the contents of the order of protection he was charged with violating.

¶ 30    Section 12-30(a)(2) of the Criminal Code of 1961 (Code) provides that a defendant cannot be charged with violating an order of protection unless he has been "served notice of the contents of the order, pursuant to the Illinois Domestic Violence Act of 1986 *** , or otherwise has acquired actual knowledge of the contents of the order." 720 ILCS 5/12-30(a)(2) (West 2010). Section 222.10(a) of the Illinois Domestic Violence Act of 1986 allows a respondent to be served with "a short form notification." 750 ILCS 60/222.10(a) (West 2010).

¶ 31    Section 12-30(a)(2) of the Code requires that the defendant have knowledge of the provisions of the order that he is charged with violating. *Ramos*, 316 Ill. App. 3d at 23. "[A] verbatim reading of the entire contents of the order of protection is not necessary in order to put the defendant on notice of what conduct is prohibited." *Id.* If the legislature had intended that the defendant be informed of the entire contents of the order, then the statute would require that a defendant be served with a copy of the order of protection before he could be charged with committing a violation of the order. *Id.*

¶ 32    Here, defendant was aware and notified of the contents of the emergency order of protection entered against him on April 12, 2007. On May 3, 2007, defendant was notified in open court that the emergency order became a two-year plenary order. In June 2009, he was notified, by the short form notification, that the order of protection was extended until 2011. The short form notification informed defendant that he was required to "stay away from petitioner and protected parties." By looking at the original emergency order, which the plenary order specifically referred to, defendant knew that he was prohibited from sending mail to his sons.

¶ 33    There is no requirement for a process server to read an entire copy of the order of protection to a respondent. See *Ramos*, 316 Ill. App. 3d at 23. Where, as here, defendant was provided a "short form notification" that complied with the statute, he received adequate notice of the order of protection and its contents.

¶ 34                                                         III

¶ 35    Defendant next argues that his convictions should be reversed because there was no valid order of protection in place in 2010. He contends that the emergency order of protection expired before a plenary order of protection was entered. Therefore, none of the plenary orders, including the one entered in 2009, are valid.

¶ 36    Emergency orders of protection are effective for not less than 14 days nor more than 21 days. 750 ILCS 60/220(a)(1) (West 2010). Section 1.11 of the Statute on Statutes provides: "[t]he time within which any act provided by law is to be done shall be computed by excluding the first day and including the last." 5 ILCS 70/1.11 (West 2010). An emergency order of protection dissolves 21 days *after* the day it is issued. *In re A.M.*, 2013 IL App (3d) 120809, ¶ 41.

¶ 37    Here, the emergency order of protection was entered on Thursday, April 12, 2007, and was set to expire 21 days later, on Thursday, May 3, 2007. See *id*. The first plenary order of protection was entered on May 3, 2007; thus, it was timely. The second plenary order was also timely because it was entered on May 1, 2009, the day that the first plenary order expired. The plenary orders of protection were valid and enforceable.

¶ 38                                                         IV

¶ 39    Defendant argues that he was not properly admonished at either of his trials about his waiver of counsel. He admits that he did not raise this issue in his posttrial motions but argues that it constitutes plain error.

¶ 40    A defendant has the right to counsel at every critical stage of a trial. *People v. Belknap*, 396 Ill. App. 3d 183, 212-13 (2009). However, a defendant also has the right to waive counsel and represent himself. *People v. Black*, 2011 IL App (5th) 080089, ¶ 11. "The gravity of a waiver requires a trial court to fully inform a defendant of both the nature of the right being abandoned and the consequences of the decision." *Id*. A defendant may engage in self-representation only if he voluntarily, knowingly and intelligently waives his right to counsel. *Id*.

¶ 41    To accomplish a valid waiver of counsel, Supreme Court Rule 401(a) requires:

        "(a) Waiver of Counsel. Any waiver of counsel shall be in open court. The court shall not permit a waiver of counsel by a person accused of an offense punishable by

imprisonment without first, by addressing the defendant personally in open court, informing him of and determining that he understands the following:

> (1) the nature of the charge;
>
> (2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences; and
>
> (3) that he has a right to counsel and, if he is indigent, to have counsel appointed for him by the court." Ill. S. Ct. R. 401(a) (eff. July 1, 1984).

Substantial compliance with Rule 401 is required. *People v. Campbell*, 359 Ill. App. 3d 281, 285 (2005). If a defendant does not receive any admonishments from the court, there is not substantial compliance and no valid waiver of counsel. *Black*, 2011 IL App (5th) 080089, ¶ 20; *Campbell*, 359 Ill. App. 3d at 285.

¶ 42    The right to counsel is fundamental. *Black*, 2011 IL App (5th) 080089, ¶ 24. Failure to issue Rule 401 admonitions amounts to plain error. *People v. Vazquez*, 2011 IL App (2d) 091155, ¶ 14; *Black*, 2011 IL App (5th) 080089, ¶ 23; *People v. Vernón*, 396 Ill. App. 3d 145, 150 (2009); *People v. Jiles*, 364 Ill. App. 3d 320, 329 (2006); *People v. Herring*, 327 Ill. App. 3d 259, 261 (2002); *People v. Stoops*, 313 Ill. App. 3d 269, 273 (2000).

¶ 43    Requiring a defendant to proceed *pro se* with standby counsel is not a waiver within the meaning of Rule 401(a) because the defendant has the benefit of standby counsel for advice and consultation. *People v. Gibson*, 304 Ill. App. 3d 923, 928 (1999). Thus, the admonitions of the rule are not required where standby counsel is present "at all times during the course of the trial." *Id.* However, if counsel is not present at any critical stage in a trial, the defendant must be given Rule 401(a) admonitions. See *Black*, 2011 IL App (5th) 080089, ¶¶ 13-15. Jury deliberations are a critical stage in a trial. *Belknap*, 396 Ill. App. 3d at 212.

¶ 44    Defendant chose to proceed *pro se* at his first trial. The trial court appointed standby counsel for defendant but then dismissed standby counsel prior to jury deliberations. Under these circumstances, where defendant had no counsel during a critical stage of his trial, the trial court had to admonish him pursuant to Rule 401(a). See *Black*, 2011 IL App (5th) 080089, ¶¶ 13-15. At his second trial, defendant proceeded *pro se* without the assistance of standby counsel. Because defendant represented himself without any assistance, the trial court was required to admonish defendant pursuant to Rule 401(a) before his second trial began. See *Campbell*, 359 Ill. App. 3d at 285.

¶ 45    The trial court failed to provide defendant with any of the required admonishments at either of his trials. The State, however, argues that there was substantial compliance with Rule 401(a) because defendant's responses during his fitness evaluation showed that he understood the charges against him and the sentence he could receive if convicted. We disagree for several reasons.

¶ 46    First, the questions during the fitness evaluation came from a psychiatrist, not from the court. "[R]ule [401] flatly states that any waiver of counsel must be in open court." *Black*, 2011 IL App (5th) 080089, ¶ 14. Additionally, the questions asked during the fitness evaluation were designed only to determine defendant's fitness to stand trial. However, "[i]f a defendant seeks to waive counsel, the trial court must not only determine that he is competent to stand trial but also satisfy itself that his waiver of this constitutional right is knowing and voluntary." *People v. Lego*, 168 Ill. 2d 561, 564 (1995). Furthermore, the questions were not designed to

notify defendant of the possible dangers of representation, which the Rule 401 admonitions are intended to do. See *id*. (a purpose of the rule is to make a defendant "aware of the dangers and disadvantages of self-representation"). Finally, defendant was never told during either trial that he had "the right to counsel and, if he is indigent, to have counsel appointed for him by the court," as required by the Rule. Ill. S. Ct. R. 401(a)(3) (eff. July 1, 1984). To the contrary, the judge told defendant during his second trial that he was not entitled to court-appointed counsel.

¶ 47     The trial court committed plain and reversible error at both of defendant's trials by failing to admonish defendant regarding his waiver of counsel in compliance with Rule 401(a). We reverse defendant's convictions on that basis.

¶ 48                                              V

¶ 49     Defendant also argues that he was denied his right to counsel at both trials. First, he argues that the trial court erred in dismissing his standby counsel prior to the conclusion of the first trial. Additionally, he argues that the court erred in refusing his request for counsel at his second trial.

¶ 50                                              A

¶ 51     A trial judge has discretion to appoint standby counsel for a *pro se* defendant. *People v. Smith*, 249 Ill. App. 3d 460, 470 (1993). Additionally, a trial court has discretion to decide the nature and extent of standby counsel's involvement. *Id*. However, a trial court may not place a new restriction or limitation on standby counsel that was not set out from the beginning of the trial. See *People v. Lindsey*, 17 Ill. App. 3d 137, 143 (1974). It is prejudicial to a defendant and an abuse of discretion to tell a "defendant he could represent himself, with a court-designated lawyer to assist him, and then, at crucial phases of his trial, when he made reasonable requests for assistance, prevent the lawyer from assisting him." *Id*. at 144.

¶ 52     Here, the trial court excused defendant's standby counsel prior to jury deliberations, a critical stage in his trial. See *Belknap*, 396 Ill. App. 3d at 212. Such an act was prejudicial and an abuse of discretion because it deprived defendant of any assistance at crucial phases of his trial. See *Lindsey*, 17 Ill. App. 3d at 143.

¶ 53                                              B

¶ 54     An indigent defendant has the constitutional right to have counsel appointed. *People v. Bliey*, 232 Ill. App. 3d 606, 619 (1992). However, a defendant has no right to select from or experiment with counsel appointed to him to the detriment of the orderly process of law. *People v. Blaney*, 324 Ill. App. 3d 221, 225 (2001).

¶ 55     Here, Jaquays represented defendant in proceedings prior to his second trial. Defendant consistently and repeatedly informed the court that he wanted Jaquays to continue to represent him, as his public defender, at his second trial. The trial court refused defendant's request, stating that Jaquays could not represent him as a public defender because the public defender's office refused to be appointed to his case when, in fact, the public defender's office indicated that it had no objection to defendant being represented by his current counsel. By telling defendant that he could not proceed with his current public defender but could only proceed *pro se*, hire a new attorney or convince his attorney to provide him *pro bono* representation, the

trial court denied defendant his right to have counsel appointed. See *Bliey*, 232 Ill. App. 3d at 619.

¶ 56                                                    VI

¶ 57        For the reasons set forth above, we reverse defendant's convictions and remand for further proceedings. We need not address defendant's remaining arguments.

¶ 58                                              CONCLUSION

¶ 59        The judgment of the circuit court of Will County is reversed, and the cause is remanded for further proceedings.

¶ 60        Reversed and remanded.